IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK FINN                                    :
                                                : CIVIL NO.  3: 19-CV-1905
            Plaintiffs,                          :
                                                :
vs.                                             : (JUDGE CAPUTO)
                                                :
GEORGE BIVENS, et al.                           :
                                                :
            Defendants:                          : (ELECTRONICALLY FILED)

**DEFENDANTS LUZERNE COUNTY CHILDREN AND YOUTH
SERVICES AND MALLORY LILLER'S BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................... i-iii

TABLE OF CITATIONS ................................................ iv-viii

I.      PROCEDURAL HISTORY .................................................. 1

II.     STATEMENT OF FACTS ................................................... 2

        General Statement .................................................. 2

        Facts Specific to the Amended Complaint ............................ 3

III.    STATEMENT OF THE QUESTION PRESENTED ............ 4

                WHETHER FINN'S AMENDED COMPLAINT
                FAILS TO STATE A PLAUSIBLE CLAIM FOR
                RELIEF AGAINST LUZERNE COUNTY OR
                CASEWORKER LILLER UNDER ANY OF THE
                THEORIES SET FORTH IN THE AMENDED
                COMPLAINT? ........................................................ 4

IV.     LAW AND ARGUMENT ................................................... 5

        THE LEGAL STANDARD ................................................ 5

        A.      FINN FAILS TO STATE A CLAIM IN COUNT I
                FOR A FOURTH, FIFTH AND FOURTEENTH
                AMENDMENT VIOLATION REGARDING FALSE
                ARREST AND FALSIFICATION OF EVIDENCE.... 6

        B.      FINN FAILS TO STATE A CLAIM IN COUNT II
                FOR A FOURTH, FIFTH AND FOURTEENTH,
                AMENDMENT VIOLATION REGARDING
                MALICIOUS PROSECUTION.................................... 9

i

1.      The Fifth and Fourteenth Amendments
        Do Not Apply. ...................................................    9

2.      Finn Fails To State a Claim For Malicious
        Prosecution Under the Fourth Amendment
        Against Liller......................................................    11

        a.      Finn Fails to State A Claim For
                Fourteenth Amendment Malicious
                Prosecution Against Liller....................    11

                i.      Liller is Immune From Suit
                        Under Absolute and/or
                        Qualified Immunity....................    12

C.      FINN FAILS TO STATE A CLAIM FOR A
        DUE PROCESS VIOLATION TO TIMELY
        DISCLOSE EXCULPATORY EVIDENCE............    20

D.      LILLER IS IMMUNE FROM STATE LAW
        MALICIOUS PROSECUTION -
        COUNT XII– PURSUANT TO THE CHILD
        PROTECTIVE SERVICES ACT.............................    22

E.      FINN'S 42 U.S.C. §1983 CONSPIRACY CLAIM
        AGAINST LILLER FAILS AS
        A MATTER OF LAW...............................................    23

F.      FINN'S COMMON LAW CIVIL CONSPIRACY
        CLAIM FAILS..........................................................    23

G.      THE *MONELL* CLAIM FAILS AS A MATTER
        OF LAW....................................................................    24

ii

H.   FINN FAILS TO STATE A CLAIM FOR
     INTENTIONAL INFLICTION OF EMOTIONAL
     DISTRESS...................................................................   27

V.   CONCLUSION ......................................................   30

iii

# TABLE OF CITATIONS

## CASES

Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) ........................    8

Ashcroft v. Al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074,
179 L.Ed.2d 1149 (2011) ................................................................    21

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949,
173 L.Ed.2d 868 (2009)..................................................................    5, 6, 15

Banyas v. Lower Bucks Hospital, 293 Pa. Super. 122,
437 A.2d 1236 (1981) .....................................................................    28

Bayer v. Monroe Cty. Children & Youth Servs., 577 F.3d 186,
188 (3d Cir. 2009) ...........................................................................    20

Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955,
167 L.Ed.2d 929 (2007)..................................................................    5

Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780,
28 L.Ed.2d 113 (1971) ....................................................................    11

Bowser v. Blair Cty. Children & Youth Servs., 346 F.Supp.2d 788,
794 (W.D. Pa. 2004)........................................................................    16, 20

Bryan v. Erie Cty. Office of Children & Youth, 861 F.Supp. 2d 553,
585 (W.D. Pa. 2012) ........................................................................    29

B.S. v. Somerset Cty., 704 F.3d 250, 269 (3d Cir. 2013) .................    16, 26

Caldwell v. Beard, 324 F.App'x 186, 189 (3d Cir. 2009)...............    8

Citizens for Health v. Leavitt, 428 f.3d 167, 178 n.11
(3d Cir. 2005)..................................................................................    10

Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265
(3d Cir. 1979) ................................................................ 28

City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259
(3d Cir. 1998)................................................................. 2

Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542,
105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ............................ 11

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212
(3d Cir. 2013)................................................................. 6

Corbett v. Morgenstern, 934 F.Supp. 680, 684 (E.D. Pa. 1994)........ 29

Covington v. Int'l Ass'n of Approved Basketball Officials,
710 F.3d 114, 118 (3d Cir. 2013) ..................................... 5

Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir. 1988) .............. 29

Crouse v. S. Lebanon Twp., 668 F.Supp.2d 664, 671
(M.D. Pa. 2009) ............................................................. 18

Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) .......................... 18

DeJesus v. Wehrman, Civ. A. No. 16-CV-4745, 2017 U.S. Dist.
LEXIS 160233 at *11-*12, 2017 WL 4310245
(E.D. Pa. Sept. 27, 2017) ................................................. 11

DelRio-Mocci v. Connolly Prop., Inc., 672 F.3d 241, 245
(3d Cir. 2012) ............................................................... 5

Dennis v. DeJong, E.D. Pa. 2011, 867 F. Supp. 2d 588
issued 2011 WL 4528219.................................................. 22, 29

Ernst v. Child & Youth Servs. of Chester Cty., 108 F.3d 486, 495
(3d Cir. 1997)................................................................................. 15

Ethypharm S.A. France v. Abbott Laboratories, 707 F.3d 223,
231, n. 14 (3d Cir. 2013) ............................................................... 5

Forrest v. Parry, — F.3d —, No. 16-4351, 2019 WL 2998601,
at *8 (3d Cir. July 10, 2019) .......................................................... 26

Geness v. Cox, 902 F.3d 344, 354 n. 5 (3d Cir. 2018)..................... 22

Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014). ............... 12

Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998) ....................... 27, 28

Kearney v. JPC Equestrian, Inc., No. 3:11-CV-01419,
2012 WL 1020276, at *7 (M.D. Pa. Jan. 4, 2012) .......................... 29

Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547,
559 (M.D. Pa. 2012)....................................................................... 23

Mammaro v. N.J. Div. Of Child Protection, 814 F.3d 164,
169 (3d Cir. 2016) .......................................................................... 21

Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)... 23

McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009)......... 26

Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978).. 26

Morales v. Busbee, 972 F. Supp. 254, 266 (D.N.J. 1997) ............... 7

Mullenix v. Luna, 136 S.Ct. 305, 312, 193 L.Ed.2d 255 (2015)... 19

Myers v Koopman, 738 F.3d 1190, 1195 (10th Cir. 2013).............. 7

Noviho v. Lancaster Cty. of Pa., 683 F.App'x 160, 166
(3d Cir 2017) ............................................................................. 7

Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970) ............ 28

Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700
(3d Cir. 1993)............................................................................. 23

Pearson v. Callahan, 555 U.S. 223 (2009).................................... 18, 19

Regan v. Twp. of Lower Merion, 36 F. Supp. 2d 245, 251
(E.D. Pa. 1999)........................................................................... 30

Rehberg v. Paulk, — U.S. —, —, 132 S.Ct. 1497, 1505,
182 L.Ed2d 593 (2012)............................................................... 16, 17

Robinson v. Family Dollar, Inc., No. 14-3189, 2015 WL
3400836 (E.D. Pa. May 27, 2015) .............................................. 29

Saucier v. Katz, 533 U.S. 194, 201-02 (2001)............................... 18, 19

Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014)............................. 2

S. Cross Overseas Agencies, Inc. v. WahKwong Shipping Grp.
Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999)................................... 2

Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996) ...................... 24

Silver v. Medel, 894 f.2d 598, 606 n.16 (3d Cir. 1990) ................ 28

Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) ........ 29

Torres v. McLaughlin, 163 F.3d 169, 172, 173 (3d Cir. 1988)....... 11

United States v. Lanier, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219,
137 L.Ed.2d 432 (1997) .............................................................. 9

Van Tassel v. Lawrence County Domestic Relations Section,
No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009) .......... 25

Wallace v. Kato, 549 U.S. 384, 390 (2007).................................. 7

Walters v. Washington County, No. 06-1355, 2009 WL
7936639 (W.D. Pa. March 23, 2009) ............................................ 25

Wattie-Bey v. Attorney Gen.'s Office, 424 Fed. Appx. 95, 97
(3d Cir. 2011)................................................................................ 25

Whitehead v. City of Phila., No. 13-2167, 2014 U.S. Dist.
LEXIS 21000, 2014 WL 657486, at *2 (E.D. Pa. Feb. 19, 2014)... 21

Will v. Michigan Dept. Of State Police, 491 U.S. 58 (1989).......... 24, 25

Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006) ................... 18,19

Wilson v. Layne, 526 U.S. 603, 609 (1999) ........................................ 18

STATUTES

U.S. Const. Amend. XI. ...................................................................... 24

Fed.R.Civ.P. 12(b)(6) ......................................................................... 5

Fed.R.Evid. 201 .................................................................................. 2

23 Pa. C.S. §2318 ............................................................................... 23, 27

Pennsylvania Child Services Protection Act, 23 Pa. C.S.
§6301 et seq ...................................................................................... 14

Restatement (Second) of Torts §46, comment d, ............................... 27

## I.   PROCEDURAL HISTORY:

On or about October 14, 2019, Plaintiff Patrick Finn filed a Complaint in the Court of Common Pleas of Luzerne County against Moving Defendants and various other Defendants.

On November 1, 2019, Co-Defendants Wright Twp. Police Department and Chief Engler, through their counsel, filed a Notice of Removal to the Middle District of Pennsylvania.

On or about November 7, 2019, undersigned counsel entered his appearance on behalf of the Luzerne County Defendants and filed a Motion for Enlargement of Time to File their Responsive Pleading.  This Motion was granted by the Court on November 8, 2019, thereby making Moving Defendants' responsive pleading due on or before December 6, 2019.

On December 6, 2019, Moving Defendants filed a Motion to Dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state a claim upon which relief can be granted.

On January 17, 2020, Plaintiff filed an Amended Complaint.  On January 31, 2020, Moving Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint.  This brief is filed in support thereof.

## II.    STATEMENT OF FACTS

### General Statement

Plaintiff has alleged that he was wrongfully arrested for an incident involving his daughter and allegations of inappropriate comments and touching. Following an investigation by authorities which included Wright Township Police and Moving Defendants Luzerne County CYS and Caseworker Liller, Plaintiff was charged with Indecent Assault, Without the Consent of Other, Indecent Assault of Person Less that Thirteen years of Age, and Corruption of a Minor. After the Commonwealth's presentation of its case in the criminal matter in the Court of Common Pleas of Luzerne County, Judge Vough dismissed the action.[1] Plaintiff then filed the instant action against numerous Defendants including Moving Defendants Luzerne County CYS and Liller seeking damages for physical harm, injuries, lost wages, benefits, mental anguish, emotional distress, humiliation, annoyance and inconvenience as well as punitive damages and

---

[1]  [I]tems of which the court may take judicial notice – particularly public records of court proceedings– may be considered without converting a motion to dismiss into one for summary judgment.  For example, "on a motion to dismiss, we may take judicial notice of another court's opinion– not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." S. Cross Overseas Agencies, Inc. v. WahKwong Shipping Grp. Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed.R.Evid. 201.  It is well-settled that matters of public record, including official court dockets and court files, may be considered by the Court without converting a motion to dismiss into a motion for summary judgment.  Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014); City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998).

attorneys fees and costs.

**Facts Specific to the Amended Complaint**[2]

Plaintiff's AC, as it applies to Moving Defendants, involves the following

Counts/Claims:

- Count I asserts a claim against Engler, Bivens, Liller and Finn for violation of 42 U.S.C. §1983 based on a Fourth and Fourteenth Amendment violation of substantive due process regarding malicious prosecution, false arrest and falsification of evidence;

- Count II asserted a claim against Engler, Liller, Bivens and Finn for common Law Malicious Prosecution;

- Count III asserts a claim against Engler, Bivens, Liller and Finn for conspiracy to violate 42 U.S.C. §1983;

- Count IV asserts a claim against Engler, Bivens, Liller and Maria Finn for common law civil conspiracy;

- Count V asserts a *Monell* claim against Luzerne County CYS for a violation of 42 U.S.C. §1983 under the Fourth, Fifth and Fourteenth Amendments in violation of the substantive due process clause regarding false arrest, fabrication of evidence and malicious prosecution; and

- Count VI asserts a claim for intentional infliction of emotional distress against all individual defendants.

Specifically with regard to Moving Defendants, in paragraphs 48 through 57

inclusive, Plaintiff alleges that Defendant Liller interviewed Plaintiff's daughter

---

[2] The Amended Complaint will hereinafter be referred to as "AC".

3

without recording the interview (against protocol) and provided Defendants

Bivens and Finn with a copy of a tape recording they made of a conversation

Bivens and Finn had with the minor (AC at ¶48).  Plaintiff further alleges that

during their interview of the minor, they had knowledge that the minor tried to

wake Plaintiff repeatedly but that he would not wake up and that he believed the

minor to be his girlfriend (AC at ¶49).

Plaintiff maintains that Liller (along with Engler) knew that "crucially"

important exculpatory facts were omitted in the information provided to them by

Defendants Finn and Bivens (AC at ¶51).  In addition, Plaintiff alleges that Liller

and Engler intentionally omitted these facts from their respective investigations to

justify Plaintiff's arrest and prosecution for sexual abuse of his daughter for the

purpose destroying Plaintiff's career, reputation and personal life (AC at ¶51-56).

## III.    STATEMENT OF THE QUESTION PRESENTED

**WHETHER FINN'S AMENDED COMPLAINT FAILS
TO STATE A PLAUSIBLE CLAIM FOR RELIEF
AGAINST LUZERNE COUNTY AND CASEWORKER
LILLER UNDER ANY OF THE THEORIES SET FORTH
IN THE AMENDED COMPLAINT?**

(Suggested Answer: In the Affirmative)

4

## IV.    LAW AND ARGUMENT

**THE LEGAL STANDARD**

A complaint must be dismissed under Fed.R.Civ.P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Prop., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Twombly, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ethypharm S.A. France v. Abbott Laboratories, 707 F.3d 223, 231, n. 14 (3d Cir. 2013) (internal citations

5

and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown [n] – that the pleader is entitled to relief." Iqbal, 556, U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### A. FINN FAILS TO STATE A CLAIM IN COUNT I FOR A FOURTH, FIFTH AND FOURTEENTH AMENDMENT VIOLATION REGARDING FALSE ARREST AND FALSIFICATION OF EVIDENCE.

Finn's claims set forth in Count I fail on a number of different grounds well-settled in Third Circuit jurisprudence.

First of all, Finn specifically pleads that his arrest was effectuated pursuant

6

to a sworn criminal complaint and affidavit of probable cause (Complaint, Doc. 1, Exhibit "B" at ¶53).  Finn has not alleged any period of detention in his AC, let alone detention prior to the filing of the criminal complaint.

Finn alleges unlawful arrest prior to the time the criminal charges were dismissed.  "Arrests made under a 'validly issued – if not validly supported – arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." Noviho v. Lancaster Cty. of Pa., 683 F.App'x 160, 166 (3d Cir 2017) (quoting Myers v Koopman, 738 F.3d 1190, 1195 (10th Cir. 2013)); *See* Morales v. Busbee, 972 F. Supp. 254, 266 (D.N.J. 1997) ("The 'legal process' that separates a false arrest/ imprisonment claim from a malicious prosecution claim may be in the form of an arrest warrant, an arraignment or an indictment."); *see also* Wallace v. Kato, 549 U.S. 384, 390 (2007) (explaining that the tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process").

Finn was arrested based on an arrest warrant supported by co-defendant Engler's affidavit of probable cause.  Because Plaintiff alleges unlawful arrest due to faulty process, rather than detention prior to legal process, his claim arises as a Fourth Amendment malicious prosecution claim rather than a false arrest or false

imprisonment claim.

Because Finn's claims associated with his prosecution sound exclusively in malicious prosecution under the Fourth Amendment, there is no need to conduct a lengthy analysis of his cryptic reference to the Fifth and Fourteenth Amendments. However, a short analysis of the Fifth and Fourteenth Amendment references made in the AC are facially specious.

In his AC, Finn appears to assert claims based on the Fifth Amendment Due Process Clause. "[T]he due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." Caldwell v. Beard, 324 F.App'x 186, 189 (3d Cir. 2009). Because none of the Moving Defendants named herein are federal actors, Finn's claims based upon Fifth Amendment violations fail as a matter of law.

Finn is also attempting to assert a procedural or substantive due process violation based on the fact that he was arrested and/or charged with, inter alia, indecent assault (Doc. 1, Exhibit "B" at ¶55).

Notably, Finn has not alleged that he was denied constitutionally adequate process in connection with his criminal proceedings, nor could he plausibly do so. See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (plaintiff must allege that the procedures available did not provide due process of law). Therefore, no

procedural due process violation has been stated.

Moreover, Finn cannot state a viable substantive due process violation based on the allegedly wrongful arrest or prosecution. Because these events directly implicate Fourth Amendment protections, they must be analyzed as potential Fourth Amendment claims. *See* United States v. Lanier, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") Accordingly, Finn has not plead a due process violation in connection with his criminal proceedings.

Based upon the foregoing, Count I of the AC should be dismissed.

**B.    FINN FAILS TO STATE A CLAIM IN COUNT II FOR A FOURTH, FIFTH AND FOURTEENTH, AMENDMENT VIOLATION REGARDING MALICIOUS PROSECUTION.**

**1.    The Fifth and Fourteenth Amendments Do Not Apply.**

In Count II, Finn has conflated the constitutional amendments which are at play in what is undisputedly a malicious prosecution claim which under Supreme Court and Third Circuit jurisprudence, must be advanced as a Fourth Amendment

claim.[3]

In the preceding argument, Liller has already established that the Fifth Amendment has no application to the allegations of the instant case. Mr. Finn does not assert which clause of the Fifth Amendment he believes Defendants violated. If he is asserting a Fifth Amendment due process claim, his claim fails because the Fifth Amendment applies to actions of the federal government, not state actions. *See* Citizens for Health v. Leavitt, 428 f.3d 167, 178 n.11 (3d Cir. 2005). If he is asserting a claim under the Takings Clause, which provides that "private property [shall not] be taken for public use, without just compensation," nothing in the AC alleges that Defendants took any of Mr. Finn's private property for public use without compensating him. As such, the Fifth Amendment has absolutely no application in the instant case.

It is also clear that Finn as neither a free standing Fourteenth Amendment claim under either procedural or substantive due process. Finn asserts that he was subject to malicious prosecution in violation of the due process clause. The "'root requirement' of the Due Process Clause" ... "is that an individual be given an opportunity for a hearing *before* he is deprived of any significant property

---

[3] To borrow an apt description offered in another case by Magistrate Judge Carlson, Finn's Complaint is "often both conclusory and opaque."

interest." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). Although malicious prosecution claims may be premised on both the Fourth and Fourteenth Amendments and may also include police conduct that violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution, such claims are not cognizable under the "more generalized notion of substantive due process." Albright v. Oliver, 510 U.S. at 272-273, 114 S.Ct. At 813; Torres v. McLaughlin, 163 F.3d 169, 172, 173 (3d Cir. 1988); DeJesus v. Wehrman, Civ. A. No. 16-CV-4745, 2017 U.S. Dist. LEXIS 160233 at *11-*12, 2017 WL 4310245 (E.D. Pa. Sept. 27, 2017). And, as it is clear from the face of Finn's complaint, Finn was afforded procedural due process through the criminal proceedings and preliminary hearing. Accordingly, Finn fails to state a due process claim, either procedural or substantive.

> **2.  Finn Fails To State a Claim For Malicious Prosecution Under the Fourth Amendment Against Liller.**
>
> > **a.  Finn Fails to State A Claim For Fourteenth Amendment Malicious Prosecution Against Liller.**

At the outset, it must be noted that Finn's claim fails against Liller for two

reasons.  First, Liller did not initiate a criminal proceeding against Finn.  Second, Finn has made no allegations that he suffered a deprivation of liberty incident to his arrest consistent with the concept of seizure.  To plead a claim for malicious prosecution, a plaintiff must show "that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendants initiated the proceedings without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014).  The AC establishes that Engler instituted the criminal proceedings, not Liller.  In addition, the AC is bereft of any contention related to Finn suffering a deprivation of liberty that would trigger the protection from arrest after the procurement of a warrant under the Fourth Amendment.  As such, Finn's claim fails on this basis alone.

### i.     Liller is Immune From Suit Under Absolute and/or Qualified Immunity.

Liller submits that in her capacity as a CYS caseworker discharging her responsibilities to investigate allegations of child abuse, she is entitled to absolute, or in the alternative, qualified immunity.  In his AC, Finn alleges the following:

- On the evening in question, Finn was sleeping in the same bed with his daughter (Doc. 1, Exhibit "B" at ¶20);

- Finn was talking in his sleep and "making contact" [with his daughter] while he was sound asleep (Doc 1, Exhibit "B" at ¶21);

- The child tried to wake Finn unsuccessfully on several occasions (Doc. 1, Exhibit "B" at ¶¶22, 24);

- [the child] "remained awake due to Plaintiff using expletives while referring to his girlfriend at the time, ..., while talking in his sleep and making contact with her (Doc. 1, Exhibit "B" at ¶23).

Moreover, Finn admits that his conduct was so unsettling to Finn's child that she left the bed she was in with her father and contacted her mother to let her know that she wanted to be picked up earlier than scheduled.

The sole factual predicate upon which Finn relies to support his claim against Liller is the allegation that Liller had been made aware that during this episode Finn had:

- always been asleep (Doc. 1, Exhibit "B" at ¶49);

- [Finn's daughter] tried unsuccessfully to wake Finn; and

- [Finn's daughter] maintained that during the incident "Plaintiff

13

always thought that she was in fact his girlfriend at the time, Lauren"

(Doc. 1, Exhibit "B" at ¶49).

It is also important to note that there are no allegations that Liller instituted a dependency proceeding against Finn, only that she participated in the interview which led to the institution of criminal charges against Finn.  Finally, Liller's involvement was triggered by the minor daughter's mother's report of the incident to Childline (Doc. 1, Exhibit B" at ¶50).

Liller, as a Luzerne County CYS caseworker, was acting pursuant to the Pennsylvania Child Services Protection Act, 23 Pa. C.S. §6301, et seq.  The mandate of the statute is set forth in Section 6302:

> (a) Findings. – Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment.
>
> (b) Purposes. – It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purposes of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained.  It is also the

14

> purpose of this chapter to ensure that each county
> children and youth agency establish a program of
> protective services with procedures to assess risk of
> harm to a child and with the capabilities to respond
> adequately to meet the needs of the family and child who
> may be at risk and to prioritize the response and services
> to children most at risk.

The factual predicate outlined by Finn in his AC demonstrates not that Liller violated any federal constitutional standard but rather she simply acted responsibly in discharging her obligations as mandated by the state statute.  As she acted completely within the bounds of the statute in participating in the investigation of Finn she is entitled to immunity under federal constitutional law.

Finn's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a federal civil rights claims against Liller or CYS.  Aschcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Indeed, this federal civil rights claim runs afoul of a series of immunities long recognized in the law.

Finn may not bring this claim against Liller for a simple reason: She is absolutely immune from civil liability for her role in state court litigation on behalf of children who may be at risk.  Thus, "CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating and prosecuting dependency proceedings."  Ernst v. Child & Youth

Servs. of Chester Cty., 108 F.3d 486, 495 (3d Cir. 1997). This "absolute immunity

protects no only ... 'presentations of ... recommendations to a court, but also the []

'gathering and evaluation of information' to formulate those recommendations and

to prepare for judicial proceedings." B.S. v. Somerset Cty., 704 F.3d 250, 269 (3d

Cir. 2013). This immunity also extends to actions relating to obtaining and

compliance with a court order directing officials to take custody of children, the

first step in any state court dependency proceeding. Bowser v. Blair Cty. Children

& Youth Servs., 346 F.Supp.2d 788, 794 (W.D. Pa. 2004).

Further, to the extent that Finn premises the liability of Liller upon her

status as a witness in the criminal case against him, it is also well-settled that

under §1983 a "witness has absolute immunity with respect to *any* claim based on

the witness' testimony. When a witness is sued because of ... testimony, the

[Supreme] Court [has written], "'the claims of the individual must yield to the

dictates of public policy.'" ... Without absolute immunity for witnesses, the court

concluded, the truth-seeking process at trial would be impaired. Witnesses 'might

be reluctant to come forward to testify,' and even if a witness took the stand, the

witness 'might be inclined to shade his testimony in favor of the potential

plaintiff' for 'fear of subsequent liability.'" Rehberg v. Paulk, — U.S. —, —, 132

S.Ct. 1497, 1505, 182 L.Ed2d 593 (2012). Indeed, this case aptly illustrates why

witnesses are entitled to immunity from civil liability.  Finn's AC would seek to sanction Liller for fulfilling a basic duty of citizenship, testifying as a witness in court proceedings.  Thus, Finn's theory of prosecution of this claim goes directly to the evil which inspired absolute witness immunity: a fear that "Witnesses 'might be inclined to shade his testimony in favor of the potential plaintiff for 'fear of subsequent liability.'" Rehberg v. Paulk, — U.S. —, —, 132 S.Ct. 1497, 1505, 182 L.Ed2d 593 (2012).  Since witnesses are immune from civil liability for the act of testifying, while Finn has not averred that Liller testified in any criminal proceedings which may have occurred, Liller makes the point to reinforce the notion that a child advocate's role in aiding law enforcement in child abuse prosecution is broad.

In the event that this Court were to reject the application of absolute immunity to Liller's conduct, the facts of this case would also fully justify dismissal of Liller on qualified immunity grounds.  While Finn must show the deprivation of a right secured by the United States Constitution or the laws of the United States, satisfying these elements alone does not guarantee that he is entitled to recover damages.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right [] of which a reasonable person would have

17

known.  Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F.Supp.2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), *abrogated in part by Pearson*, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must

18

undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier 533 U.S. at 201-02.

The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).  However, the Supreme Court has also cautioned us that there must be great factual congruence between a defendant's conduct and settled case law in order to defeat a claim of qualified immunity.  Indeed, the Supreme Court has expressly admonished us that "qualified immunity protects actions in the "hazy border between excessive and acceptable [conduct under the constitution]."  Brosseau, *supra*, at 201, 125 S.Ct. 596 (quoting Saucier, 533 U.S. at 206, 121 S.Ct. 2151; some internal quotation marks omitted)."  Mullenix v. Luna, 136 S.Ct. 305, 312, 193 L.Ed.2d 255 (2015).

In this case, given the settled case law, which both permits and may compel the course of conduct followed by Liller, it cannot be said that she violated Finn's clearly established constitutional rights when she conducted an investigation aimed at ensuring the safety of Finn's daughter.  Indeed, qualified immunity has frequently been extended to children and youth agency personnel like Liller, who

19

have participated in state court proceedings intended to ensure the safety of children.  *See e.g.*, Bayer v. Monroe Cty. Children & Youth Servs., 577 F.3d 186, 188 (3d Cir. 2009); Bowser v. Blair Cty. Children & Youth Servs., 346 F.Supp.2d 788, 794 (W.D. Pa. 2004) (qualified immunity for children and youth employee who seized child pursuant to court order).  Therefore, even if only qualified immunity extended to the conduct of Liller, this Court would be compelled to conclude any damages claims in this case would still fail on qualified immunity grounds.  In short, Finn's claims fail both on absolute and qualified immunity grounds.  The Fourth Amendment malicious prosecution claim should, therefore, be dismissed.

### C.   FINN FAILS TO STATE A CLAIM FOR A DUE PROCESS VIOLATION TO TIMELY DISCLOSE EXCULPATORY EVIDENCE.

Once again, Finn has no due process claim under the Fifth Amendment for failure to disclose exculpatory evidence because the due process clause of the Fifth Amendment does not apply to municipal defendants.

With regard to the Fourteenth Amendment, Third Circuit jurisprudence has long held that an aggrieved citizen does not possess a due process right to dictate the type or robustness of the criminal investigation to which he or she is subjected. Even if this Court were to accept that Liller had some independent responsibility

20

to notify the Court that evidence had been adduced that Finn was sleeping while

cursing and thrashing about while in bed with his daughter, this fact alone would

be unavailing since Liller would again be entitled to qualified immunity on such a

theory.

The court in Thomas v. City of Phila., 290 F. Supp 3d 371, 386 (E.D. Pa.

2018) explained:

> There is "no constitutional right to a police
> investigation." *E.g.*, Whitehead v. City of Phila., No. 13-
> 2167, 2014 U.S. Dist. LEXIS 21000, 2014 WL 657486,
> at *2 (E.D. Pa. Feb. 19, 2014).  As this Court put the
> matter in Wright, "[i]t certainly remains to be seen
> whether there is an independent cause of action under the
> Fourteenth Amendment ... for 'failing to conduct a
> constitutionally adequate investigation,' and the *Court
> will not affirmatively recognize one here at this time.*"
> 229 F. Supp. 3d at 323 n.3 (emphasis added) ... [T]he
> Third Circuit Court of Appeals has not recognized such a
> cause of action.  Even if such a constitutional cause of
> action exists, it is not – and certainly was not in the mid-
> 1990s – clearly established, meaning that the defendants
> are (or would be) shielded by qualified immunity
> anyway.  *See, e.g.*, Ashcroft v. Al-Kidd, 563 U.S. 731,
> 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011);
> Mammaro v. N.J. Div. Of Child Protection, 814 F.3d
> 164, 169 (3d Cir. 2016).

Id. 290 F. Supp. at 386.  Moreover, even if this Court were to construe this claim

as one for "reckless investigation," the Third Circuit recently noted that a claim for

"reckless investigation" has not yet been recognized; accordingly, "no such

constitutional right ... was 'clearly established' at the relevant time, as required to overcome qualified immunity." Geness v. Cox, 902 F.3d 344, 354 n. 5 (3d Cir. 2018). Accordingly, Liller is entitled to qualified immunity on Finn's Fourteenth Amendment claim as it relates to Liller's role in interviewing the child.

**D.    LILLER IS IMMUNE FROM STATE LAW MALICIOUS PROSECUTION - COUNT II– PURSUANT TO THE CHILD PROTECTIVE SERVICES ACT.**

Finn asserts a claim against Liller for common law malicious prosecution. This claim is categorically barred pursuant to the immunity provisions of the Child Protective Services Act, 23 Pa. C.S. §6318(b)[4]:

(b) Departmental and county agency immunity. – An official or employee of the department or county agency who refers a report of suspected child abuse for general protective services to law enforcement authorities or provides services as authorized by this chapter shall have immunity from civil and criminal liability that might otherwise result from this action.

Accordingly, Count II must be dismissed.

---

[4] Pursuant to Pennsylvania statute providing immunity from civil liability for any employee of a county agency who reported suspected child abuse to police, employees of county's child welfare agency were entitled to immunity from parents' claim, under Pennsylvania law, that employees conspired to get father arrested for alleged child abuse. Dennis v. DeJong, E.D. Pa. 2011, 867 F. Supp. 2d 588 issued 2011 WL 4528219.

### E.     FINN'S 42 U.S.C. §1983 CONSPIRACY CLAIM AGAINST LILLER FAILS AS A MATTER OF LAW.

Plaintiff brings a Section 1983 conspiracy claim against the individually named Defendants including Moving Defendant Liller.  To properly state a Section 1983 conspiracy claim, Finn must show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 559 (M.D. Pa. 2012) (Munley, J.) (*citing* Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)).  "A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events." Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000).

Finn fails to state a Section 1983 conspiracy claim.  Accepting all of the pleaded facts as true, it is clear that Defendants acted for the lawful purpose of investigating a case of suspected child abuse.  Finn's 42 U.S.C. §1983 conspiracy claim (Count III) fails because he has failed to assert a viable underlying constitutional deprivation against Moving Defendant Liller.

### F.     FINN'S COMMON LAW CIVIL CONSPIRACY CLAIM FAILS.

Count IV  must be dismissed pursuant to 23 Pa. C.S. §2318, discussed in

23

Argument D above.

## G.    THE *MONELL* CLAIM FAILS AS A MATTER OF LAW.

First, this claim against Luzerne County Children and Youth Services runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials.  As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States ... .", U.S. Const. Amend. XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies.  Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment.  Will v. Michigan Dept. Of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens.  Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania unitary court

24

system.  These agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the various domestic relations agencies which are defined by statute as arms of the state courts, and institutions of state government. *See, e.g.,* Wattie-Bey v. Attorney Gen.'s Office, 424 Fed. Appx. 95, 97 (3d Cir. 2011); Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestic Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court.  Moreover, as a matter of statutory interpretation, the plaintiffs cannot bring a damages action against these state agencies or state officials in their official capacity since it is well-settled that a state, a state agency or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

In short, the immunities conferred on this state court agency both by statute, and by the United States Constitution, compel dismissal of this AC as to Luzerne County Children and Youth Services.

Moreover, the allegations set forth in this AC do not support a civil rights agency liability claim under Section 1983. To state a §1983 claim against a municipality, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See* Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978). The plaintiff "must identify [the] custom or policy and specify what exactly that custom or policy was" to satisfy the pleading standard. McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). A plaintiff may also state basis for municipal liability by "alleging failure-to-supervise, train, or discipline ... [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." Forrest v. Parry, — F.3d —, No. 16-4351, 2019 WL 2998601, at *8 (3d Cir. July 10, 2019). "This consists of a showing as to whether (1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.

Finn has not identified a specific policy or custom of Luzerne County CYS that led to an alleged violation of his constitutional rights nor pled a basis for concluding that municipal failures amounted to deliberate indifference, which is fatal to his claims. *See* B.S. v. Somerset Cty., 704 F.3d 250, 274 (3d Cir. 2013)

("With respect to municipalities such as the County, [the] inquiry turns on whether the due process violation was a result of the County's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"). Accordingly, any claims for municipal liability fail as a matter of law.

## H.    FINN FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Initially, the immunity provision of 23 Pa. C.S. §2318 dictates dismissal of the claim for intentional infliction of emotional distress. Even in the absence of immunity, this claim should be dismissed. With respect to claims for intentional infliction of emotional distress, under Pennsylvania law, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven." Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998). Indeed, the Restatement (Second) of Torts instructs that "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts

27

§46, comment d; Hoy, 720 A.2d at 754.  In keeping with these strict standards, the

Pennsylvania Supreme Court has provided examples of conduct found to state a

claim for intentional infliction of emotional distress, and such examples

demonstrate the extraordinary nature of the theory:

> Cases which have found a sufficient basis for a cause of
> action of intentional infliction of emotional distress have
> had presented only the most egregious conduct.  *See,
> e.g.*, Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118
> (1970) (defendant , after striking and killing plaintiff's
> son with automobile, and after failing to notify
> authorities or seek medical assistance, buried body in a
> field where discovered two months later and returned to
> parents (recognizing but not adopting section 46));
> Banyas v. Lower Bucks Hospital, 293 Pa. Super. 122,
> 437 A.2d 1236 (1981) (defendants intentionally
> fabricated records to suggest that plaintiff had killed a
> third party which led to plaintiff being indicted for
> homicide); Chuy v. Philadelphia Eagles Football Club,
> 595 F.2d 1265 (3d Cir. 1979) (defendant's team
> physician released to press information that plaintiff was
> suffering from fatal disease, when physician knew such
> information was false).

Hoy, 720 A.2d at 754.

Thus, in order to sustain a claim for intentional infliction of emotional

distress, Pennsylvania law requires that a plaintiff plead that: "(1) the conduct was

extreme and outrageous; (2) the conduct was intentional; (3) the conduct caused

emotional distress; and (4) the distress was severe.  Silver v. Medel, 894 f.2d 598,

606 n.16 (3d Cir. 1990).  Ultimately, in order to prevail on a claim for intentional

infliction of emotional distress, a plaintiff must show that a defendant's conduct

exceeded the bounds of decency and is intolerable under prevailing societal

norms.  Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005); *see also* Cox

v. Keystone Carbon Co., 861 F.2d 390 (3d Cir. 1988)."  Kearney v. JPC

Equestrian, Inc., No. 3:11-CV-01419, 2012 WL 1020276, at *7 (M.D. Pa. Jan. 4,

2012) *report and recommendation adopted*, No 3:11-CV-01419, 2012 WL

1020266 (M.D. Pa. Mar. 26, 2012).  This claim also requires an allegation of some

type of physical injury, harm or illness related to the distress.  Robinson v. Family

Dollar, Inc., No. 14-3189, 2015 WL 3400836 (E.D. Pa. May 27, 2015) (citing

Corbett v. Morgenstern, 934 F.Supp. 680, 684 (E.D. Pa. 1994)).  Applying these

exacting and precise legal standards, courts have found that simply using state

legal processes to address child custody and safety concerns is not the type of

outrageous behavior which will support a state tort of intentional infliction of

emotional distress. *See* Dennis v. DeJong, 953 F. Supp. 2d 568, 593 (E.D. Pa.

2013), *aff'd*, 557 Fed. Appx. 112 (3d Cir. 2014); Bryan v. Erie Cty. Office of

Children & Youth, 861 F.Supp. 2d 553, 585 (W.D. Pa. 2012); Dennis v. DeJong,

867 F.Supp.2d 588, 659 (E.D. Pa. 2011).  These decisions all recognize a

fundamental truth: reliance upon legal processes and the rule of law to address and

29

resolve concerns relating to the safety of children as a matter of law cannot be considered to be conduct "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society." <u>Regan v. Twp. of Lower Merion</u>, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

Based upon the exacting standard outlined above, it is clear that Liller did not engage in conduct which even remotely approached the type of activity that would warrant survival of this claim.  As such, it should be dismissed.

## V.    CONCLUSION

Based upon the foregoing, Luzerne County CYS and Liller respectfully request that Plaintiff's Amended Complaint be dismissed in its entirety.

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

By:    s/Sean P. McDonough
      Sean P. McDonough, Esquire
      Attorney ID # 47428
      Attorney for Defendants Luzerne Co. CYS, and Liller
      Dougherty, Leventhal & Price, LLP
      75 Glenmaura National Blvd.
      Moosic, PA 18507
      Phone (570) 347-1011
      Fax (570) 347-7028
      smcdonough@dlplaw.com

## CERTIFICATE OF REGARDING WORD COUNT

I, Sean P. McDonough, Esquire, Attorney for Defendants, hereby certify

that the body of the foregoing brief, including footnotes, is 6,695 words in length.


Date: February 12, 2020                    S/Sean P. McDonough
                                           Sean P. McDonough, Esquire
                                           Attorney for Defendants Luzerne Co.
                                           CYS and Liller

## CERTIFICATE OF SERVICE

I, Sean P. McDonough, Esquire, Attorney for Defendants Luzerne County CYS, Van Saun and Liller, hereby certify that I served a true and correct copy of the foregoing Brief in Support of their Motion to Dismiss Plaintiff's Amended Complaint on the following individuals, by means indicated on February 12, 2020.

Via Electronic Filing

Larry A. Weisberg, Esquire
Derrek W. Cummings, Esquire
Steve T. Mann, Jr., Esquire
Stephen P. Gunther, Esquire
Weisberg Cummings, P.C.
2704 Commerce Drive, Ste. B
Harrisburg, PA 17110-9380
dcummings@weisbergcummings.com
lweisberg@weisbergcummings.com
sgunther@mwcfirm.com
smahan@weisbergcummings.com

Mark J. Kozlowski, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
P.O. Box 3118
Scranton, PA 18505-3118
mjkozlowski@mdwcg.com
(Counsel for Defendants Wright Twp. & Engler)

Frank J. Lavery, Esquire
Elizabeth L. Kramer, Esquire
Lavery Law
225 Market Street, Ste. 304
Harrisburg, PA 17108-1245
flavery@laverylaw.com
(Counsel for Defendant Maria Finn)

32

Alexander T. Korn, Esquire
Karen M. Romano, Esquire
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
akorn@attorneygeneral.gov
(Counsel for Bivens, Gray & PSP)

                                        s/Sean P. McDonough
                                        Sean P. McDonough, Esquire
                                        Attorney for Defendants Luzerne County
                                        CYS and Liller