## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| PATRICK FINN,<br><br>              Plaintiff,<br><br>v.<br><br>GEORGE BIVENS, et. al.,<br><br>              Defendants. | Case No.:  3:19-cv-01905-ARC<br><br>Judge Caputo<br><br>Jury Trial Demanded<br><br><br>*Electronically Filed* |

## **BRIEF IN OPPOSITION TO DEFENDANTS LUZERNE COUNTY CHILDREN AND YOUTH SERVICES AND MALLORY LILLER'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**TABLE OF CITATIONS**                                              iii

**I.    PROCEDURAL HISTORY**                                       1

**II.   STATEMENT OF FACTS**                                       1

**III.  QUESTION PRESENTED**                                       9

    1.    Whether Plaintiff has sufficiently alleged claims against
        LCCYS and Liller?

**IV.   LEGAL STANDARD**                                          10

**V.    ARGUMENT**                                               11

    A.    Count I – Plaintiff v. Liller:  Violation of 42 U.S.C. § 1983     11

        1.    Absolute Immunity                                  16

        2.    Qualified Immunity                                 18

    B.    Count II – Plaintiff v. Liller:  Common Law Malicious          23
        Prosecution

    C.    Count III – Plaintiff v. Liller:  Conspiracy to Violate        25
        42 U.S.C. § 1983

    D.    Count IV – Plaintiff v. Liller:  Common Law Civil              28
        Conspiracy

    E.    Count V – Plaintiff v. LCCYS:  Violation of                    29
        42 U.S.C. § 1983 Based on *Monell* Liability

    F.    Count VI – Plaintiff v. Liller:  Intentional Infliction        31
        of Emotional Distress

**VI.   CONCLUSION**                                              34

TABLE OF CITATIONS

CASES                                                                        Page

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998)                              26

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598,                   26
26 L.Ed.2d 142 (1970)

*Ammlung v. City of Chester,* 494 F.2d 811 (3rd Cir.1974)                     26-27

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)                                      10

*B.S. v. Somerset Cnty.,* 704 F.3d 250 (3d Cir.2013)                          24

*Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122,                          32
437 A.2d 1236 (1981)

*Bayer v. Monroe County Children & Youth Services,* 577 F.3d 186             17
 (3d Cir.2009)

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)                             10

*Black v. Montgomery Cty.*, 835 F.3d 358 (3d Cir. 2016),                      11, 21
*as amended* (Sept. 16, 2016)

*Brozovich v. Circle C Group Homes, Inc.,* 120 Pa.Cmwlth. 417,                24
 548 A.2d 698 (Pa.Commw.Ct.1988)

*Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606,                  17
125 L.Ed.2d 209 (1993)

*Burns v. Alexander*, 776 F. Supp. 2d 57 (W.D. Pa. 2011)          11, 18, 19, 20

*Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)      17

*Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)       16, 18

*Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265                    31, 32
(3d Cir. 1979)

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ... 24

*Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ... 19

*Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458 (W.D. Pa. 2019) ... 20

*Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) ... 26

*Dutton v. Buckingham Twp.*, No. CIV. A. 97-3354, 1997 WL 732856 (E.D. Pa. Nov. 13, 1997) ... 27

*Fanning v. Montgomery Cty. Children & Youth Servs.*, 702 F. Supp. 1184 (E.D. Pa. 1988) ... 16, 19

*Fewell v. Besner*, 444 Pa. Super. 559, 664 A.2d 577 (1995) ... 33

*Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ... 29

*Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ... 12

*Good v. Dauphin Co. Social Serv. For Children and Youth,* 891 F.2d 1087 (3d Cir.1989) ... 24

*Hammond v. Creative Financial Planning Org.,* 800 F.Supp. 1244 (E.D.Pa.1992) ... 26

*Hedges v. Musco,* 204 F.3d 109 (3d Cir.2000) ... 24

*Hishon v. King & Spaulding,* 467 U.S. 69 (1984) ... 10

*Hoffman v. Mem'l Osteopathic Hosp.*, 342 Pa. Super. 375, 492 A.2d 1382 (1985) ... 31

*Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803 (E.D. Pa. 1998), *aff'd,* 165 F.3d 242 (3d Cir. 1999) ... 28

*Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998) ... 32

*Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) .......... 15, 16, 17

*Kost v. Kozakiewicz,* 1 F.3d 176 (3d Cir. 1993) .......... 10

*Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890) .......... 29

*Maio v. Aetna, Inc.,* 221 F.3d 472 (3d Cir. 2000) .......... 10

*Marchese v. Umstead*, 110 F. Supp. 2d 361 (E.D. Pa. 2000) .......... 26

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.,* 24 F.3d 519 (3d Cir.1994) .......... 26

*Miller v. City of Philadelphia,* CIV. A. 96–3578, 1997 WL 476352 (E.D.Pa. Aug.19, 1997) .......... 24

*Miller v. City of Philadelphia,* 954 F.Supp. 1056 (E.D.Pa.1997) *aff'd,* 174 F.3d 368 (3d Cir.1999 .......... 24

*Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) .......... 19

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) .......... 29, 30, 31

*Muratore v. M/S Scotia Prince*, 845 F.2d 347 (1st Cir. 1988) .......... 32

*Napue v. People of Ill.,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) .......... 20

*Panayotides v. Rabenold,* 35 F.Supp.2d 411 (E.D.Pa.1999), *aff'd,* 210 F.3d 358 (3d Cir.2000) .......... 26

*Papieves v. Lawrence*, 437 Pa. 373 A.2d 118 (1970) .......... 32

*Rainsberger v. Benner*, 913 F.3d 640 (7th Cir. 2019) .......... 11

*Rice v. Electrolux Home Prod., Inc.*, 2015 WL 4545520 (M.D. Pa. July 28, 2015) .......... 10

*Rose v. Bartle,* 871 F.2d 331 (3d Cir.1989)    27

*Thomas v. City of Phila.*, 290 F. Supp 3d 371 (E.D. Pa. 2018)    21

*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392,    20
49 L.Ed.2d 342 (1976)

*Weaver v. Marling*, No. 2:12-CV-1777, 2013 WL 4040472    24
(W.D. Pa. Aug. 8, 2013)

*Whitlock v. Brown*, 596 F.3d 406 (7th Cir. 2010)    12

*Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)    21, 25

*Yarris v. Cty. of Delaware*, 465 F.3d 129 (3d Cir. 2006)    17

## STATUTES AND REGULATIONS

23 Pa. Stat. and Cons. Stat. Ann. § 6301 *et. seq.*    *passim*

42 U.S.C. § 1983    *passim*

Plaintiff, Patrick Finn, by and through his attorneys, submits this Brief in Opposition to Defendant Luzerne County Children and Youth Services and Mallory Liller's Motion to Dismiss Plaintiff's First Amended Complaint:

## I.    PROCEDURAL HISTORY

Plaintiff commenced this action in the Luzerne County Court of Common Pleas by filing a Writ against the above-named Defendants and others.  On or about August 22, 2019, Defendants served a Rule to File a Complaint on Plaintiff. On or about October 14, 2019, Plaintiff filed a Complaint in the Luzerne County Court of Common Pleas.  Defendants removed this action to the United States District Court for the Middle District of Pennsylvania on November 1, 2019. (Doc. 1) Plaintiff filed a First Amended Complaint on January 17, 2020 (Doc. 38), following Motions to Dismiss filed by the various Defendants.  On January 31, 2020, Defendants Luzerne County Children and Youth and Mallory Liller (referred to herein collectively as "Moving Defendants") filed a Motion to Dismiss Counts I, II, III, IV, V and VI of Plaintiff's Amended Complaint.  Moving Defendants filed a Brief in Support of the Motion to Dismiss on February 14, 2020 (Doc. 46), to which Plaintiff now responds.

## II.    STATEMENT OF FACTS

Plaintiff Patrick Finn has been employed by the Pennsylvania State Police ("PSP") since November 7, 1994.  (Doc. 38 at ¶1)

Defendant Luzerne County Children & Youth Services ("LCCYS") is part of the Luzerne County, Pennsylvania municipal government. (*Id.* at ¶4)  At all times relevant, LCCYS was acting by and through its duly authorized employees and/or agents, who were then and there acting within the course and scope of their employment and/or agency and in accordance with the customs, policies and practices of such Defendant and who were also acting under color of state law. *Id.* At all times relevant, the policies of LCCYS were unconstitutional and led to a disproportionate number of individuals being indicated as child abusers in Pennsylvania when compared to other counties in the Commonwealth.  *Id.* Defendant Mallory Liller ("Liller") is a Caseworker employed by the LCCYS. (*Id.* at ¶5)  At all times relevant, Liller was acting under color of state law and in accordance with the customs, policies, practices and/or procedures of the LCCYS. *Id.*

Plaintiff and Maria Finn were married on December 1, 2006, and have a daughter, CMF, who was born in 2007. (*Id.* at ¶¶9, 10)  It was the standard practice of Plaintiff and Maria Finn since CMF was a baby that she would sleep in the same bed as Plaintiff and Maria Finn. (*Id.* at ¶11)

As a result of his positions within the PSP, Defendant George Bivens ("Bivens") has wielded significant influence and possessed significant power within the PSP, as well as both state and local law enforcement agencies and police

2

departments throughout Pennsylvania.  (*Id.* at ¶14)  Bivens has, and continues to, significantly outrank Plaintiff in the PSP chain of command.  (*Id.* at ¶15)  Upon information and belief, in or about 2012, Maria Finn, while still married to Plaintiff, entered into a consensual romantic relationship with Bivens.  (*Id.* at ¶16) Plaintiff and Maria Finn separated in or about August 2015.  (*Id.* at ¶17)

CMF spent the weekend of December 2, 2016, with Plaintiff, her biological father, and his parents (CMF's paternal grandparents) in Mountain Top, Pennsylvania.  (*Id.* at ¶19)  On or about the evening of December 3, 2016, Plaintiff slept in bed with CMF, which was standard practice as she had slept with her parents since she was a baby.  (*Id.* at ¶20)  During the night, CMF experienced Plaintiff speaking in his sleep and making contact with her while he was sound asleep.  (*Id.* at ¶21)  CMF tried wake Plaintiff on several occasions.  (*Id.* at ¶22) CMF remained awake due to Plaintiff using expletives while referring to his girlfriend at the time, Lauren, while talking in his sleep and making contact with her.  (*Id.* at ¶23)  CMF became frustrated that she could not wake Plaintiff and fall asleep herself, so she left the room to go to the couch in the living room.  (*Id.* at ¶24)

The following morning, CMF spoke with her mother by phone to let her know that she wanted to be picked up earlier than scheduled.  (*Id.* at ¶25)  On the way home, CMF was tape recorded by Maria Finn and Bivens on the side of the

3

road to explain what had occurred. (*Id.* at ¶28) Throughout the course of the tape-recorded conversation, Maria Finn and Bivens were aware that Plaintiff was asleep during the entire time he allegedly abused CMF. (*Id.* at ¶29) The statement included the following dialogue:

a.    CMF: And then he said, "Very nice."

Maria Finn: Okay

Bivens: Okay. And then – so what happened then? Did he wake up, or did he do something else?

CMF: And then I said – and then I tried to roll over. You know my jingly thing where it makes noise? I shaked it a couple times to like bring him back to his memory, but it didn't work. And…

Maria Finn: Like wake him up? Try to wake him up?

CMF: Yeah, to think that it was me and he was at Poppi's house. But it didn't work.

b.    Maria Finn: But he said A-S-S? Yeah.

Bivens: Okay.

CMF: Lots of curse works.

Bivens: Okay. And then did he wake up then, or what happened?

c.    Maria Finn: Like grabbed your chest?

CMF: Yeah.

Bivens: Okay.

Maria Finn: Did he wakeup at any moment and realize it wasn't you – I mean it wasn't her? So he always thought you were her?

CMF: I guess so.

    d.      Maria Finn:  If that happens again, you leave.  You crawl out over him, or you kick him, or you punch him.

             Bivens:  If anybody – if anybody –

             Maria Finn:  Wake him up.

*Id.* At no time during the tape recording did CMF state or agree that Plaintiff was awake or aware of his conduct.  (*Id.* at ¶30)

According to Pennsylvania's Child Protective Services Law, "Conduct that causes injury or harm to a child or creates a risk of injury or harm to a child shall not be considered child abuse if there is no evidence that the person acted intentionally, knowingly or recklessly when causing the injury or harm to the child or creating a risk of injury or harm to the child."  23 Pa. Stat. and Cons. Stat. Ann. § 6303 (West).  As such, Plaintiff could not have abused CMF since any conduct which could have been construed as abuse occurred while he was asleep, and therefore was not intentional, knowing or reckless.  *Id.* at ¶31.

On the evening of December 4, 2016, Maria Finn and Bivens decided to go to Dauphin County night court so that Maria Finn could apply for a Protection from Abuse ("PFA") Order based on the situation involving CMF and Plaintiff. (*Id.* at ¶34)  However, when Maria Finn represented the factual basis to the Night Court based on CMF's tape recorded statement as to why a PFA was necessary, Maria Finn, conspiring with Bivens, knowingly and intentionally omitted the facts that 1) Plaintiff was always asleep; 2) CMF tried to wake Plaintiff by shaking her

5

toy with a "jingly thing" and by kicking him in the stomach; 3) she could not wake him despite these efforts; and 4) she maintained that during the incident Plaintiff always thought that she was in fact his girlfriend at the time, Lauren (these facts are referred to herein collectively as the "Exculpatory Evidence"). (*Id.* at ¶35)

In addition to omitting the Exculpatory Evidence, Maria Finn, once again conspiring with Bivens, falsely alleged in her application for a PFA Order that Plaintiff was drunk at the time of the incident, a fact that was never mentioned by CMF. (*Id.* at ¶36) Maria Finn also knowingly and intentionally omitted the fact that CMF typically slept in the same bed as Plaintiff (as well as Maria Finn and Bivens), when she suggested in her application for a PFA Order that Plaintiff climbing into bed with CMF was somehow nefarious or unusual. *Id.*

Maria Finn and Bivens next proceeded to arrange for Bivens to contact ChildLine, even though they knew that Plaintiff could not have abused CMF because Plaintiff was asleep. (*Id.* at ¶42) Bivens and Maria Finn knew that Bivens' report of sexual abuse of a minor would automatically trigger the Pennsylvania Department of Human Services to forward the reports to the District Attorney's office where the alleged sexual abuse occurred, who would in turn send the reports to the police jurisdiction where the alleged sexual abuse occurred, in this case the Wright Township Police Department. (*Id.* at ¶44)

As a result of the ChildLine reports by Maria Finn and Bivens, Chief Royce Engler ("Engler") received the reports on or about Tuesday, December 6, 2016, and immediately initiated a criminal investigation into Plaintiff for sexually abusing CMF. (*Id.* at ¶46) Likewise, on or about December 4, 2016, LCCYS received the ChildLine reports alleging that Plaintiff sexually abused CMF. (*Id.* at ¶47)

On Wednesday, December 7, 2016, Engler, with the assistance of Liller, interviewed CMF (without recording the interview, which was against sexual assault protocol for a minor), as well as Maria Finn and Bivens, where Engler and Liller were each provided a copy of CMF's original tape-recorded statement by Maria Finn and Bivens. (*Id.* at ¶48) At that time, both Engler and Liller had interviewed CMF and had access to her original tape-recorded statement, thus providing them with actual knowledge of the Exculpatory Evidence. (*Id.* at ¶49) During the December 7, 2016 interview of CMF by Engler and Liller, CMF stated that Plaintiff was asleep during the entire incident, that CMF tried to wake Plaintiff on a couple of occasions with a "jingly thing" or by kicking his chest or stomach, and that while Plaintiff was asleep, he thought CMF was his girlfriend, Lauren. (*Id.* at ¶50) On that same day, Maria Finn also advised Engler and Liller that from the time CMF was born until Plaintiff and Maria Finn separated, that CMF always slept with her and/or Plaintiff. *Id.*

7

Similar to Bivens, Liller has specialized training to know the requisite intent to form the elements of child abuse and the probable cause standard for a crime. (*Id.* at ¶52) Despite having exculpatory evidence regarding Plaintiff's lack of the requisite intent necessary to form the elements of child abuse and the probable cause standard for a crime, Liller knowingly and intentionally omitted these facts from her investigation to justify Plaintiff's indication as a child abuser, arrest and prosecution for sexual abuse. *Id.* Specifically, Liller, with a reckless disregard for the truth, knowingly and intentionally omitted these crucially important exculpatory facts from her Child Protective Service Investigation Report (CY-48) and unjustifiably, arbitrarily and maliciously indicated Plaintiff as a child abuser in the statewide database for Child Abuse on January 3, 2017. (*Id.* at ¶54) This designation lasted until February 28, 2019, when Plaintiff's appeal was granted by the Department of Human Services Bureau of Hearings and Appeals, in a decision which repeatedly emphasized that all evidence confirmed that Plaintiff was asleep during the alleged events and could not have acted intentionally, knowingly or recklessly. *Id.*

Engler and Liller agreed to assist Maria Finn and Bivens to knowingly and intentionally withhold and suppress crucially important exculpatory facts to make it appear as though Plaintiff could have committed these crimes and acts of child abuse for the purpose of destroying the career, reputation and personal life of

8

Plaintiff, thereby joining the conspiracy between Maria Finn and Bivens. (*Id.* at ¶56) The conspiracy between Engler, Liller, Maria Finn and Bivens, which began on or about December 7, 2016, lasted throughout the entirety of Plaintiff's prosecution and until he was ultimately acquitted on May 18, 2018. *Id.*

Maria Finn, Bivens, and Engler also gave testimony during Plaintiff's criminal trial that likewise omitted the Exculpatory Evidence. (*Id.* at ¶59) However, CMF's unwavering testimony with regard to these crucially important exculpatory facts led the criminal trial judge to dismiss all of the charges against Plaintiff pursuant to Plaintiff's motion for judgment of acquittal at the close of the Commonwealth's case against Plaintiff. (*Id.* at ¶62) Specifically, the Court granted the motion after finding that all of CMF's testimony was credible, that CMF was the most credible witness presented by the Commonwealth, and that there was not one "scintilla" of evidence presented by the Commonwealth, including the testimony of Maria Finn, Bivens, and Engler, that Plaintiff was awake during this incident. (*Id.* at ¶63)

## III.   **QUESTION PRESENTED**

1. **Whether Plaintiff has sufficiently alleged claims against LCCYS and Liller?**

   Proposed Answer: Yes.

## IV.   <u>LEGAL STANDARD</u>

"When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff."   *Rice v. Electrolux Home Prod., Inc.*, 2015 WL 4545520 at *3 (M.D. Pa. July 28, 2015) (citing *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984) and *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993)).  "At the motion to dismiss stage, the court considers whether the plaintiff is entitled to offer evidence to support its allegations."  *Rice*, 2015 WL 4545520 at *3 (citing *Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d Cir. 2000).

"A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, the plaintiff has not pled enough facts to state a claim to relief that is plausible on its face."  *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 663-664 (2009).

10

## V. **ARGUMENT**

### A. **Count I – Plaintiff v. Liller: Violation of 42 U.S.C. § 1983**

Plaintiff properly asserts claims pursuant to 42 U.S.C. § 1983 against Liller based on her withholding exculpatory evidence that violated both his 1) Fourth Amendment rights by indicating Plaintiff as a child abuser and having a warrant issued against him and subjecting him to malicious prosecution without probable cause[1] and 2) Fourteenth Amendment procedural due process rights by having him indicated as a registered child abuser[2] and criminally charged and prosecuted.[3] Section 1983 states the following in relevant part:

---

[1]    A warrant will not issue unless a neutral and disinterested magistrate independently decides that probable cause exists and therefore, intentionally or recklessly withholding exculpatory facts from a warrant application violates due process rights. See *Rainsberger v. Benner*, 913 F.3d 640, 650 (7th Cir. 2019).

Although Moving Defendants do not specifically argue that probable cause existed to issue the warrant, other defendants have made that argument in their respective Motions to Dismiss, which Plaintiff addresses in response to those Motions, where appropriate.

[2]    Failure by an official to consider exculpatory evidence *before* classifying an accused individual as an "indicated" child abuser pursuant to Pennsylvania's Child Protective Services Law ("CPSL"), 23 Pa. Cons. Stat. § 6301 *et seq.,* violates procedural due process rights. *Burns v. Alexander*, 776 F. Supp. 2d 57, 96 (W.D. Pa. 2011).

[3]    An "acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." (acknowledging that a Section 1983 claim for violation of procedural due process exists where state officials were alleged to have fabricated and suppressed exculpatory evidence). *Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016), *as amended* (Sept. 16, 2016).

**§ 1983. Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.[4]

Liller's decision to withhold undisputed facts establishing that Plaintiff was asleep at the time of the alleged incident of child abuse played a pivotal role in the

---

[4]   At the outset of Liller's Motion to Dismiss, Liller seeks to have Plaintiff's Section 1983 claims dismissed on the mistaken premise that Plaintiff cannot proceed because he fails to state a claim for 1) false arrest since the warrant was "valid" and he suffered no incarceration and 2) falsification of evidence, none of which is accurate or claims being pursued by Plaintiff. (In addition to misstating the basis for Plaintiff's constitutional claims under the Fourth and Fourteenth Amendments, Liller incorrectly states that Plaintiff is pursuing a Fifth Amendment Due Process Claim.)   Accordingly, although Plaintiff is confused as to why Liller makes arguments and cites to caselaw that are inapplicable to what was plead in the Amended Complaint, Plaintiff responds by illustrating for the Court why Plaintiff's actual claims are proper.

At no point does Plaintiff allege in his Amended Complaint that he was subjected to a false arrest that led to his incarceration or that the warrant issued for his arrest was not "valid" after it was issued by a magistrate judge of this Commonwealth.   Further, Plaintiff does not allege that any of these Defendants falsified evidence.   Rather, Plaintiff has alleged only that that the Fourth Amendment prohibits making an arrest except "upon probable cause, supported by Oath or affirmation."   U.S. Const. amend. IV.   The United States Supreme Court had held that it is a violation of an individual's rights under the Fourth Amendment to "intentionally or recklessly" withhold "exculpatory facts that would have influenced the warrant-issuing judge's probable-cause finding.   *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)" *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010).   Accordingly, although the Fourth Amendment does not support a claim on an arrest made pursuant to a valid warrant, it is permissible challenge the "truthfulness of the information relied on to establish probable cause for the issuance of the warrant.   *See Franks,* 438 U.S. at 171, 98 S.Ct. 2674." *Id.*

Defendant confuses Plaintiff further by discussing and analyzing other theoretical due process violations, procedural and substantive, that Plaintiff did not bring in his Amended Complaint. (Doc. 46, Pages 8-9).

12

efforts to have a warrant application issued against Plaintiff and to have him prosecuted without probable cause, as well as improperly indicated as a child abuser in Pennsylvania. There is no doubt that Liller, a highly trained government official and LCCYS caseworker, possessed sufficient knowledge and expertise to understand that knowingly and intentionally refusing to disclose or consider that Plaintiff's daughter maintained that her father was asleep and that she could not wake him made the abuse allegations in this instance an impossibility. Specifically, Liller is trained to apply the Pennsylvania Child Protection Services Law, 23 Pa. Cons. Stat. § 6301, *et seq.* ("CPSL") to accusations of suspected child abuse and therefore would have known that "[c]onduct that causes injury or harm to a child or creates a risk of injury or harm to a child *shall not be considered child abuse if there is no evidence that the person acted intentionally, knowingly or recklessly* when causing the injury or harm to the child or creating a risk of injury or harm to the child." 23 Pa. Cons. Stat. § 6303 (emphasis added). Accordingly, Liller would have known that if she disclosed the fact that Plaintiff was asleep during the incident, he would have lacked the requisite intent necessary to establish even the possibility of child abuse.

Liller's malicious and reckless conduct was also evidenced by her failure to follow the requirements of the CPSL and its inherent procedural due process rights by failing to:

13

1) meet with CMF within 24 hours after receiving a "report of suspected child abuse" (Doc. 38 at ¶¶46-47) (a county agency must "commence an appropriate investigation" and meet with the child alleged to have been abused within 24 hours) 23 Pa. Cons. Stat. § 6368(a);

2) interview Plaintiff as the alleged perpetrator of the abuse ("[t]he investigation shall include interviews with all subjects of the report, including the alleged perpetrator") 23 Pa. Stat. and Cons. Stat. § 6368(d);

3) timely send notice to the Pennsylvania Department of Human Services that Plaintiff was accused of sexually abusing his daughter and that a final determination of abuse was made regarding the incident ("[i]mmediately upon conclusion of the child abuse investigation, the county agency shall provide the results of its investigation" so that the alleged perpetrator is notified of the outcome, provided the report and made aware of his due process rights) 23 Pa. Stat. and Cons. Stat. § 6368(f); and

4) properly classify this incident of alleged abuse as an "unfounded report" by refusing to consider exculpatory  evidence under the statutorily mandated "substantial evidence" standard used to conclude whether abuse exists (substantial evidence is defined as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion,"  which includes automatically classifying a report  as an "unfounded report" if the report of alleged child abuse is neither a "founded report" nor an "indicated report" after considering all of the facts)  23 Pa. Stat. and Cons. Stat. § 6368.

!
Liller's deprivation of Plaintiff's procedural safeguards shocks the conscious and was all driven by her predetermination that Plaintiff was guilty of sexually abusing CMF because she knowingly and intentionally refused to consider the available exculpatory evidence.  The fallout from all of this deliberate conduct by Liller had a horrible impact on both the personal and professional life of Plaintiff, for which Liller should be held liable.

14

Liller, in an effort to avoid any liability as an LCCYS caseworker for her malicious and reckless conduct as it pertains to Plaintiff, seeks to cloak herself in either absolute or qualified immunity as a county official.  (Doc. 46, p. 12). "Whether a public official can successfully plead immunity—absolute or qualified—in defense against a law suit arising out of the performance of official duties depends on the nature of those duties." *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).  Accordingly, to determine whether Liller is entitled to immunity—absolute or qualified—we must begin with an examination of the official duties discharged by Liller that are the basis of Plaintiff's claims.

Here, Plaintiff has alleged that Liller, an individual with specialized training pertaining to child abuse investigations, had access to exculpatory evidence indicating that Plaintiff was asleep at the time of the alleged incident of abuse and that Liller knowingly and intentionally omitted these facts from her investigation, choosing instead to consider only inculpatory evidence, to deprive Plaintiff of his procedural due process rights under the CPSL, contribute to his arrest application and subsequent prosecution without probable cause, and have him indicated as a child abuser.  Plaintiff's allegations precisely charge that Liller knowingly and intentionally omitted these crucially important exculpatory facts from her Child Protective Service Investigation Report (CY-48) and unjustifiably, arbitrarily and maliciously indicated Plaintiff as a child abuser in the statewide database for Child

15

Abuse on January 3, 2017. On February 28, 2019, when Plaintiff's appeal of his indication was granted by the Department of Human Services, the decision repeatedly emphasized that all evidence confirmed that Plaintiff was asleep during the alleged events and could not have acted intentionally, knowingly or recklessly. As such, the immunity inquiry applicable to Liller questions whether she can be held liable under Section 1983 for her intentional decision to withhold exculpatory evidence as a LCCYS official in violation of Plaintiff's rights.

### 1.    Absolute Immunity

Since the U.S. Supreme Court decided in *Imbler* that prosecutors enjoy absolute immunity from civil suits arising from their official duties, absolute immunity from suit under Section 1983 has been widely held to apply to officials where they are acting in *prosecutorial* roles, *see, e.g., Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (officials in the Department of Agriculture are absolutely immune from suits based on their decision to initiate administrative proceedings) (emphasis added). *Fanning v. Montgomery Cty. Children & Youth Servs.*, 702 F. Supp. 1184, 1186 (E.D. Pa. 1988). Furthermore, "[c]ourts have generally, although not uniformly, extended this rationale to social workers, finding them absolutely immune from suit in the performance of prosecutorial functions." *Id.* at 1186. However, the *Imbler* Court stopped short of extending absolute immunity for officials carrying out non-prosecutorial functions,

16

such as administrative or investigative duties.  *Imbler*, 424 U.S. 409, 430–31, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976).[5]  The Third Circuit likewise clarified this issue and made it perfectly clear that the "investigative or administrative" actions of child-welfare workers are not awarded "absolute immunity."  *Bayer v. Monroe County Children & Youth Services,* 577 F.3d 186, 194–195 (3d Cir.2009).  As such, absolute immunity, as Liller advocates, does not blanket all of her conduct simply because she is employed by LCCYS.  To the contrary, only qualified immunity can shield Liller from liability for her non-prosecutorial "investigative or administrative" functions.

Plaintiff's allegations of unlawful conduct against Liller as set forth above are non-prosecutorial administrative decisions and/or investigatory functions that deprived Plaintiff of his constitutional rights.  Plaintiff has never challenged or complained that Liller, as a LCCYS official, acted on a referral of child abuse involving Plaintiff's daughter - functions certainly within the specific mandates of Liller's official duties pursuant to the CPSL.[6]  Rather, Plaintiff specifically attacks

---

[5]    Since *Imbler,* the U.S. Supreme Court has clarified that absolute immunity does not cloak "'[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *see also Burns* [*v. Reed*]*,* 500 U.S. [478,] 494–96, 111 S.Ct. 1934." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006).

[6]    "An official or employee of the . . . county agency who refers a report of suspected child abuse for general protective services to law enforcement authorities or provides services as authorized by this chapter shall have immunity from civil and criminal liability that might otherwise result from this action."  23 Pa. Cons. Stat. § 6318(b).

17

Liller's unilateral decision to predetermine the outcome of LCCYS's inadequate investigation into whether Plaintiff sexually abused his daughter by knowingly and intentionally omitting specific exculpatory facts that proved his innocence; conduct that the courts of this Commonwealth have held specifically violates an individual's procedural due process rights and could only be granted qualified immunity.[7]    Accordingly, immunity for Liller, as far as it concerns *absolute immunity*, must fail.

### 2.    Qualified Immunity

Qualified immunity for Liller's conduct should also be denied.  Qualified immunity grants adequate protection for officials who make "mere mistakes in judgment" within the context of constitutional violations pursuant to Section 1983. *Butz,* 438 U.S. at 507, 96 S.Ct. at 2911.  As Plaintiff has illustrated throughout, nothing about Liller's conduct comes close to being "mere mistakes in judgment" considering the intentional and deliberate nature surrounding her decisions to withhold exculpatory evidence and ignore the mandates of the CPSL.  Liller had all of the evidence available to her at all times, and at no time was she forced to make a split-second decision to protect CMF's ongoing safety since Plaintiff was prohibited by the courts from seeing CMF throughout this entire ordeal.

---

[7]    The Court must determine qualified immunity when a caseworker indicates an alleged child abuser "based *solely* on inculpatory evidence, and without reference to the available exculpatory evidence" in violation of the Due Process Clause. *Burns*, 776 F. Supp. 2d at 96.

18

However, having alleged a violation of procedural due process rights, Plaintiff can overcome Liller's "defense of qualified immunity 'only by showing that *those rights* were clearly established at the time of the conduct at issue.' *Davis v. Scherer,* 468 U.S. 183, 193–197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (emphasis added)." *Burns*, 776 F. Supp. 2d at 96. "Qualified immunity, unlike absolute immunity, does not protect an official from suit for violations of legal norms clearly established at the time of the official actions complained of. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)." *Fanning*, 702 F. Supp. at 1187. "Only when an official violates clearly established rights of which the official should have been aware is the official subject to a federal damages action under the qualified immunity standard." *Id.* at 1189. Accordingly, the final inquiry into whether Liller is entitled to qualified immunity is to determine whether her conduct violated the clearly established legal norms and rights of Plaintiff.

The *Burns* Court remarkably faced this exact question when it considered qualified immunity for a caseworker who withheld exculpatory evidence. In *Burns* the Court was "convinced that a reasonable investigator . . . would have known that the Due Process Clause prohibited a determination that Burns was an 'indicated' child abuser based *solely* on inculpatory evidence, and without reference to the available exculpatory evidence." *Burns*, 776 F. Supp. 2d at 96. Moreover, a

19

caseworker investigating child abuse would have known that the Fourteenth Amendment requires consideration of exculpatory evidence *before* making a determination of child abuse. *Id.* at 97. Liller cannot credibly argue that it was unclear whether Plaintiff's rights were established at the time she decided to withhold and ignore the available exculpatory evidence. As a result, because Plaintiff—just like the plaintiff in *Burns*—alleges that the caseworker, here Liller, ignored exculpatory evidence during the course of her investigation, Plaintiff's averments are enough to overcome Liller's defense of qualified immunity on a Motion to Dismiss. *Id.* Consequently, qualified immunity must fail just like absolute immunity, thus exposing Liller to liability for her conduct under Section 1983.

Liller's contention that Plaintiff fails to state a Fourteenth Amendment Due Process Claim by alleging that Liller fabricated evidence[8] by withholding exculpatory facts that ultimately led to Plaintiff being both criminally charged and indicated as a child abuser is in direct conflict with well-established United States Supreme Court and Third Circuit jurisprudence.[9] It is without question in the

---

[8]    In the context of Section 1983 claims, fabrication of evidence is the mirror image of suppression of exculpatory evidence. *Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458, 482 (W.D. Pa. 2019).

[9]    "Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for 'corruption of the truth-seeking function of the trial process.' *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *see Napue v. People of Ill.,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (acknowledging the principle that state actors 'may not knowingly use false

20

Third Circuit that "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." (acknowledging that a Section 1983 claim for violation of procedural due process exists where state officials were alleged to have fabricated and suppressed exculpatory evidence). *Black*, 835 F.3d at 371.  As such, Plaintiff is well within his rights to pursue this claim against Liller; a separate claim that is likewise not immune from prosecution based on the same arguments above that subject Liller to liability for her actions.

Liller ignores this reality and instead directs this Courts attention to *Thomas v. City of Phila.*, 290 F. Supp 3d 371, 386 (E.D. Pa. 2018) to illustrate the unrelated holding that a constitutional cause of action does not arise because a plaintiff is not provided an adequate investigation, or in Liller's words a constitutional claim for "reckless investigation."  (Doc. 46, p. 21).  As a result, Plaintiff is once again confronted with an attempt by Liller to dismiss his properly recognized

---

evidence . . . [is] implicit in any concept of ordered liberty"). The Supreme Court has explained that section 1983 is intended 'to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.' *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).  A contrary holding would contravene the purposes of section 1983.  There is no meaningful reason why due process protections precluding fabricated evidence should turn on whether or not one is convicted at trial." *Black v. Montgomery Cty.*, 835 F.3d at 370.

21

constitutional claims on unchallenged caselaw and arguments never advocated by Plaintiff. Nonetheless, Plaintiff responds in an effort to mitigate any confusion.

Plaintiff has maintained throughout that Liller's withholding of exculpatory evidence violated his constitutional rights by subjecting him to an unjustified criminal prosecution and indication for child abuse. At all times, Liller was fully aware that Plaintiff was asleep during the alleged abuse incident, and that conduct by an accused "*shall not be considered child abuse if there is no evidence that the person acted intentionally, knowingly or recklessly* when causing the injury or harm to the child." 23 Pa. Cons. Stat. § 6303 (emphasis added). Despite Liller's training and expertise, she fabricated the evidentiary record by suppressing these exculpatory facts and setting in motion a cascade of events that ruined Plaintiff's personal and professional life. Plaintiff now seeks to hold Liller liable for violating his due process rights. How or why Liller ignores the judicial truth that her decision to withhold exculpatory evidence creates a separate claim under the Fourteenth Amendment is beyond the knowledge of the Plaintiff.

For the reasons stated above, as well as Plaintiff's previous arguments as to why Liller does not enjoy qualified immunity for her conduct, this argument too must fail.

22

**B.    Count II – Plaintiff v. Liller:    Common Law Malicious Prosecution**

Liller argues that Plaintiff is "categorically barred" from bringing a claim of malicious prosecution pursuant to the CPSL and, therefore Count II of Plaintiff's Amended Complaint should be dismissed. (Doc. 46, Page 22). Liller's efforts to dismiss Count II rely on the following immunity provision set forth in the CPSL:

> (b) Departmental and county agency immunity. - An official or employee of the department or county agency who refers a report of suspected child abuse for general protective services to law enforcement authorities or provides services as authorized by this chapter shall have immunity from civil and criminal liability that might otherwise result from this action.

23 Pa. Cons. Stat. § 6318(b). As explained earlier, Plaintiff has never objected to Liller performing her mandated services pursuant to the CPSL, including her referral report of child abuse involving Plaintiff's daughter, which undoubtedly are shielded from liability under the above immunity provision. And, had Liller discharged her duties without intentionally, maliciously, recklessly and in bad faith withholding available exculpatory evidence from her reports, she would be immune. However, since Liller instead displayed a total disregard for Plaintiff's constitutional rights by suppressing the fact that Plaintiff was asleep and, thus, could not have sexually abused his daughter, she is liable for causing Plaintiff to be criminal charged and indicated under the CPSL without justification.

23

To the extent that Liller argues that claims against her are "categorically barred" simply because of the immunity provision of the CPSL, nothing could be further from reality. It is without question that an individual's constitutional rights are paramount and that "the resort to state law is unavailing in the context of a Fourteenth Amendment procedural due process challenge." *See B.S. v. Somerset Cnty.,* 704 F.3d 250, 273 (3d Cir.2013) (noting that "the question of 'what process is due' is a matter of constitutional law, not state law") (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). The Courts in this Commonwealth have echoed this Supreme Court precedent when applying it to a Children and Youth Services employees by affirming that Section 6318 of the CPSL grants social workers *good-faith immunity*[10] from civil liability under state law. 23 PA. CONS.STAT. ANN. § 6318. *See also Hedges v. Musco,* 204 F.3d 109, 115–16 (3d Cir.2000) ("[S]tate law cannot immunize government employees from liability resulting from their violation of federal law.") (citing *Good v. Dauphin Co. Social Serv. For Children and Youth,* 891 F.2d 1087, 1091 (3d Cir.1989))." *Weaver v. Marling*, No. 2:12-CV-1777, 2013 WL 4040472, at *8 (W.D. Pa. Aug. 8, 2013) (emphasis added).

---

[10] "The good faith of the social worker's actions is statutorily presumed, 23 PA. CONS.STAT. ANN. § 6318(b), and good faith must be judged on an objective standard." *Miller v. City of Philadelphia,* CIV. A. 96–3578, 1997 WL 476352, at *5 (E.D.Pa. Aug.19, 1997) (citing *Brozovich v. Circle C Group Homes, Inc.,* 120 Pa.Cmwlth. 417, 548 A.2d 698, 700 n. 3 (Pa.Commw.Ct.1988)). To overcome immunity at this stage, plaintiffs must allege facts that display the defendant's bad faith. *C.f. Miller v. City of Philadelphia,* 954 F.Supp. 1056, 1066 (E.D.Pa.1997) *aff'd,* 174 F.3d 368 (3d Cir.1999.)" *Weaver*, 2013 WL 4040472 at *8.

24

However, Plaintiff has alleged and maintains that Liller's decision to withhold exculpatory evidence from the factual record surrounding his allegations was done in *bad faith*. Specifically, Plaintiff has alleged that Liller's decision to withhold exculpatory was made knowingly and intentionally, and that her conduct was malicious and reckless to a degree that shocks the conscious. No state can, nor should they want to, deprive an individual legal recourse when it concerns a CYS official, such as Liller, ignoring the clearly established Constitutional rights of an accused. In fact, to do so would undermine the purpose of Section 1983 "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161, 112 S. Ct. at 1830. Accordingly, Plaintiff relies on his previous immunity analysis to illustrate why Liller likewise cannot escape liability for her conduct under the immunity provision of the CPSL.

## C.    Count III – Plaintiff v. Liller:  Conspiracy to Violate 42 U.S.C. § 1983

Liller argues that Plaintiff fails to state a Section 1983 conspiracy claim because the facts as pled in his Amended Complaint, if accepted as true, establish that all of Defendants' conduct was lawful and, therefore, no underlying constitutional violation can survive against Liller. (Doc. 46, p.23). However, Liller ignores the facts of Plaintiff's Amended Complaint.

25

Conspiracy claims brought pursuant to Section 1983 require a two-part analysis. "To state a section 1983 conspiracy claim, a plaintiff must allege: (1) *the existence of a conspiracy involving state action*; and (2) *a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy. See Panayotides v. Rabenold,* 35 F.Supp.2d 411, 419 (E.D.Pa.1999), *aff'd,* 210 F.3d 358 (3d Cir.2000)." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (emphasis added).[11]  To satisfy the first requirement of *the existence of a conspiracy involving state action*, "a plaintiff must show 'a combination of two or more person to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'"  *Panayotides,* 35 F.Supp.2d at 419 (quoting *Hammond v. Creative Financial Planning Org.,* 800 F.Supp. 1244, 1248 (E.D.Pa.1992)).  "The plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events."  *Id.* at 1248 (citing *Ammlung v. City of*

---

[11]      "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983.  *See Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.,* 24 F.3d 519, 524 (3d Cir.1994) ('State action may be found if the private party has acted with the help of or in concert with state officials.')."  *Abbott v. Latshaw*, 164 F.3d 141, 147–48 (3d Cir. 1998).  If a plaintiff alleges that private actors conspired with a state actor to deprive plaintiff of her constitutional rights in violation of Section 1983, the plaintiff has made a sufficient allegation of state action.  *Dennis,* 449 U.S. at 27–28, 101 S.Ct. at 186.

*Chester,* 494 F.2d 811, 814 (3rd Cir.1974)).[12]    Here, Plaintiff has pled facts sufficient to put all of the individual Defendants on notice of 1) who the alleged target was of the conspiracy, 2) who the alleged participants were of the conspiracy, 3) when the conspiracy is alleged to have taken place, and 4) the alleged conduct of each participant in furtherance of the conspiracy.    (*See generally*, Doc. 38).    Because of these well pled facts, Plaintiff clearly identifies the alleged "chain of events" Liller and the others agreed to set in motion, join and continue.    Additionally, Plaintiff's Amended Complaint put each of the individual Defendants on further notice that they are alleged to have acted pursuant to an agreement or meeting of the minds to act in concert to violate Plaintiff's Constitutional Rights by bringing, or maliciously and improperly continuing, the prosecution against him and having him improperly indicated as a child abuser in Pennsylvania, all under color of state law.    (Doc. 38 at ¶85-86).    Given these facts, Liller cannot credibly argue against the existence of a conspiracy involving state action.

To satisfy the second requirement of *a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy*, Plaintiff must identify

---

[12]    "[O]nly allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Dutton v. Buckingham Twp.*, No. CIV. A. 97-3354, 1997 WL 732856, at *2 (E.D. Pa. Nov. 13, 1997) (quoting *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989) (internal citations omitted)). !

27

what rights Liller violated under Section 1983.[13]    Here, Count III of Plaintiff's Amended Complaint alleges a conspiracy that individual Defendants, including Liller in her official capacity as a LCCYS caseworker, conspired to commit unlawful acts pursuant to Section 1983 (Doc. 38 at ¶¶72-77), as set forth in Count I, which states a claim for malicious prosecution.  (Id. at¶¶ 85-87).  Drawing all inferences in favor of the Plaintiff as is appropriate for a motion to dismiss, it is evident Plaintiff is alleging these individual Defendants conspired to deprive him of his 1) Fourth Amendment rights by indicating him as a child abuser and having a warrant issued against him and subjecting him to malicious prosecution without probable cause and 2) Fourteenth Amendment procedural due process rights by having him criminally charged and indicated as a registered child abuser. Accordingly, Plaintiff satisfies both prongs necessary to state a section 1983 conspiracy claim and, therefore, Liller's attempt to dismiss this claim must fail.

### D.    Count IV – Plaintiff v. Liller:  Common Law Civil Conspiracy

For the same reasons cited in Section B above, Liller is not entitled to immunity under 23 Pa. Cons. Stat. § 6318.

---

[13]    "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983'." *Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998), *aff'd,* 165 F.3d 242 (3d Cir. 1999).

**E.    Count V – Plaintiff v. LCCYS:   Violation of 42 U.S.C. § 1983 Based on *Monell* Liability**

Similar to Liller, LCCYS directs the Courts attention to areas of law and Constitutional analyses immaterial to the claims actually set forth in Plaintiff's Amended Complaint.  Here, LCCYS opens its challenge to Plaintiff's municipal liability claim against LCCYS based on an inapplicable Eleventh Amendment immunity analysis.  (Doc. 46, Pages 24-25).  Plaintiff's municipal liability claims against LCCYS, however, are brought solely as *Monell* claims pursuant to Section 1983 for alleged unconstitutional policies, procedures, practices, or customs for which Eleventh Amendment provides no protection for municipal liability.  Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy or decision officially adopted and promulgated by that body's officers.[14]   "Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every

---

[14]     "There is certainly no constitutional impediment to municipal liability.  'The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.'  ... Nor is there any basis for concluding that the Eleventh Amendment is a bar to municipal liability. See, *e. g., Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890).   Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

29

other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91, 98 S. Ct. at 2035–36. Accordingly, LCCYS is liable for its unconstitutional policies and practices.

LCCYS also argues that Plaintiff's claims fail as a matter of law under *Monell*. (Doc. 46, pp. 26-27). In doing so, LCCYS incorrectly states that Plaintiff's Amended Complaint does not identify any policies/customs that violate his constitutional rights or failures amounting to deliberate indifference. *Id.* To the contrary, Plaintiff has pled numerous facts in his Amended Complaint illustrating precisely how the "enactment, enforcement, or acquiescence of certain policies, procedures, customs or practices" of LCCYS violated his constitutional rights. (Doc. 38, ¶¶99-100). Moreover, Plaintiff has expounded on how Liller, as an LCCYS Caseworker, followed these policies and procedures to withhold exculpatory evidence that led to his unlawful arrest and malicious prosecution based upon a charging decision that lacked probable cause, and improperly indicated Plaintiff as a child abuser in Pennsylvania. *Id.* Finally, Plaintiff has specifically pled that "the policies of LCCYS were unconstitutional and led to a disproportionate number of individuals being indicated as child abusers in Pennsylvania when compared to other counties in the Commonwealth." (*Id.* at¶4).

30

Accordingly, Plaintiff has properly invoked municipal liability as set forth in *Monell*, and LCCYS should be held accountable where the execution of its policies, procedures, customs or practices by its employee "inflicts the injury" sought to be addressed through claims brought pursuant to Section 1983. *Monell*, 436 U.S. at 694, 98 S. Ct. at 2038. Because Plaintiff had sufficiently pled a violation of 42 U.S.C. §1983 based on *Monell*, his claim should not be dismissed.

    F.    **Count VI – Plaintiff v. Liller:  Intentional Infliction of Emotional Distress**

In Pennsylvania, the tort of intentional infliction of emotional distress is found when, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979). The four elements to the action are, "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Id.* "The requisite 'intention' which one must display for liability to be imposed under the tort of outrage is knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by his conduct*." *Hoffman v. Mem'l Osteopathic Hosp.*, 342 Pa. Super. 375, 382, 492 A.2d 1382, 1386 (1985) (Emphasis in original, internal quotes and citations omitted).

31

While it is true that only the most egregious conduct has been considered as a sufficient basis for a cause of action of intentional infliction of emotional distress, that conduct exists in this case.  Examples of cases in which a sufficient basis for a cause of action existed were described in *Hoy v. Angelone*, and included the following:

> *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970)(defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d. Cir.1979)(defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Hoy v. Angelone*, 554 Pa. 134, 151–52, 720 A.2d 745, 754 (1998).  In another case, the First Circuit found outrageous conduct existed when, "photographers acted deliberately and maliciously in repeatedly taking plaintiff's picture without her consent.  Worst of all, they then doctored her picture with a gorilla's face and had it displayed at the concession stand."  *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 352 (1st Cir. 1988).

In this case, Patrick Finn's life and career were inexcusably upended and thrown into disarray by Liller's outrageous conduct of presenting Patrick Finn to the Commonwealth and to the world as a child molester, when in fact Liller knew

from the outset that Mr. Finn was not a child molester and could not have committed the crimes that were alleged because he was asleep.  As a case worker with specific training about the elements and requisite intent necessary to commit child abuse, Liller's behavior was particularly outrageous and encompassed the requisite intent to commit the tort because Liller would have clearly understood the severe emotional distress her conduct would cause Plaintiff.  Liller's behavior compares favorably with the examples provided in *Hoy* for the purpose of providing a basis for the tort of intentional infliction of emotional distress.

While it is true that a plaintiff "must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress," [15] Plaintiff has sufficiently pled that as a result of Defendants' behavior he has "gained a considerable amount of weight, experienced great difficulty sleeping, suffered numerous physical and medical ailments and has been forced to take multiple medications to combat the physical destruction of his body."  (Doc. 38 at ¶109.)

Because Plaintiff has sufficiently pled a claim of Intentional Infliction of Emotional Distress, his claim should not be dismissed.

---

[15]    *Fewell v. Besner*, 444 Pa. Super. 559, 569, 664 A.2d 577, 582 (1995).

33

## VI.   <u>CONCLUSION</u>

Based upon the foregoing, Moving Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

Dated:  <u>February 28, 2020</u>

<u>/s/ Larry A. Weisberg</u>
Larry A. Weisberg (PA 83410)
lweisberg@weisbergcummings.com
Derrek W. Cummings (PA 83286)
dcummings@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110
(717) 238-5707
(717) 233-8133 (Fax)

*Counsel for Plaintiff*

34

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with the Court's Order of February 26, 2020 (Doc. 54), the undersigned, as counsel for Plaintiff, hereby certifies that the foregoing Brief does not exceed 7,500 words, and in submitting this certification, counsel has relied upon the word count feature of the word processing system used to prepare the Brief. According to the word processing system used to prepare the Brief, the actual number of words in the Brief is 7,114.

Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

February 28, 2020          */s/ Larry A. Weisberg*
Date                               Larry A. Weisberg

35

## CERTIFICATE OF SERVICE

I, Larry A. Weisberg, attorney for Plaintiff, certify that the foregoing Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint has been served via the Court's Electronic Filing System, upon counsel for all Defendants, satisfying the Federal Rules of Civil Procedure.


February 28, 2020                         /s/ Larry A. Weisberg
Date                                      Larry A. Weisberg

36