**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICK FINN,** | : | **Civil No. 3:19-CV-1905** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **GEORGE BIVENS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

## I.   Introduction

This case presents an extraordinary circumstance: an accused pedophile who is now suing his accusers. Patrick Finn was charged in state court with sexually abusing his 13-year old daughter. It is entirely undisputed that Finn slept with this child and had inappropriate sexual contact with her.  However, Finn contends that he was asleep throughout this sexual encounter. Remarkably, this pedophilic narcolepsy defense prevailed in Finn's state criminal proceedings. Have wielded this claim that he slept through a sexual encounter with a 13-year old girl as a shield to avoid criminal culpability, Finn now attempts to use this claim as a sword, suing his accusers for false arrest and malicious prosecution, and insisting that his claim that he slept through this sexual encounter so undermined any investigation or prosecution that he may now sue those who leveled these allegations against him.

1

We disagree. In our view, there was ample probable cause as a matter of law to bring the state case against Finn, who undeniably slept with and had sexual contact with his own daughter. Finding as a matter of law that probable cause existed on the uncontested facts before us, it is recommended that this motion to dismiss be granted.

This case comes before us for consideration of four motions to dismiss filed by the children and youth defendants in this case.[1] The plaintiff, Patrick Finn, filed this suit against the defendants, alleging that the defendants conspired to maliciously prosecute him for abusing his thirteen-year-old daughter, and brings related state law claims for defamation and intentional infliction of emotional distress. The instant motion to dismiss (Doc. 43), filed by Mallory Liller and Luzerne County Children and Youth Services ("CYS"), seeks to dismiss the claims against these defendants and argues that Finn has not adequately pleaded his claims. For the reasons set forth below, we agree, and we will recommend that the claims against these defendants be dismissed.

## II.   <u>Background</u>

The factual background of this case is taken from the facts set forth in the plaintiff's amended complaint. Patrick Finn, a Corporal with the Pennsylvania State

---

[1] This Report and Recommendation addresses Defendant Liller and Luzerne County Children and Youth Services ("CYS"). (Doc. 43). We will address each motion to dismiss in a separate Report and Recommendation.

Police, was married to Maria Finn, and they had a daughter, CF, who at the time of the incident in question was thirteen years old. (Doc. 38, ¶¶ 8-10). Finn alleges that his wife had an extramarital affair with George Bivens, a Lieutenant Colonel with PSP, and that he and his wife separated in 2015. (Id., ¶¶ 16-17). Bivens was transferred to PSP Harrisburg, where Finn was stationed, in 2016, and Finn alleges that Bivens taunted him about his relationship with Finn's ex-wife. (Id., ¶ 18(c)).

During the weekend of December 2, 2016, the plaintiff and his daughter were staying at his parents' home in Mount Top, Pennsylvania. (Id., ¶ 19). According to the plaintiff, it was common practice since his daughter was born for he and his wife to sleep in bed with CF. (Id., ¶ 20). Thus, on this weekend, the plaintiff did just that. (Id.) However, he proceeded to make inappropriate contact with his daughter, touching her and saying explicit things to her, as he apparently thought that CF was his girlfriend, Lauren. (Id., ¶ 21). According to the plaintiff, he did these things while he was asleep. (Id.) CF eventually left the bed and slept on the couch. (Id., ¶ 24). The following morning, CF called her mother, Maria Finn, and asked if Maria Finn would pick her up early from her grandparents' house. (Id., ¶ 25).

When Maria, along with Bivens, picked up CF from her grandparents', CF began to get upset and tell her mother what had happened the night before. (Id., ¶ 28). Maria recorded her conversation with her daughter, in which CF explained that her father had touched her inappropriately several times and had said explicit things

3

to her. (Id., ¶¶ 28-29). CF believed her father may have been asleep and noted that she had tried to wake him up. (Id.) Upon hearing CF's account of what happened and upon returning to Harrisburg, Maria and Bivens obtained a Protection From Abuse order (PFA) against Patrick Finn so that he could not have contact with CF. (Id., ¶ 34).

Thereafter, Bivens and Maria Finn contacted ChildLine to report CF's allegations of abuse, which prompted an investigation into the report by Luzerne County Children and Youth Services (CYS) and the Luzerne County District Attorney's office. (Id., ¶¶ 43-44). Police Chief Royce Engler, of the Wright Township Police Department, and Mallory Liller, a casework with CYS, interviewed CF on or about December 7, 2016. (Id., ¶ 48). Engler and Liller also were given copies of the tape recording from Maria Finn. (Id., ¶ 49). According to Finn, the tape recording established, without a doubt, that Finn was asleep during the incident with CF. (Id., ¶¶ 53-54). However, he claims that Liller and Engler omitted this fact from their respective reports. (Id.) Moreover, Finn alleges that Liller, Engler, Bivens, and Maria Finn all conspired to omit this crucial fact, thereby causing the forthcoming prosecution of Finn for child abuse. (Id., ¶¶ 56-57).

Thus, child abuse charges were brought against Finn for indecent assault and corruption of minors. (Doc. 48-1, at 2). These charges were ultimately dismissed on May 18, 2018, when the trial judge granted Finn's motion for judgment of acquittal.

4

(Doc. 32, at 72; Doc. 38, ¶ 56). However, because of Liller's report from CYS, Finn was indicated as a child abuser in the statewide database until February 28, 2019, when Finn appealed to the Department of Human Services Bureau of Hearings and Appeals, and his appeal was granted. (Doc. 38, ¶ 54).

This lawsuit followed. (Doc. 1). Finn filed the complaint in this case on November 1, 2019, and filed an amended complaint on January 17, 2020, which is the operative complaint in this case. (Doc. 38). In his complaint, Finn names four individual defendants—Maria Finn, Bivens, Liller, and Engler—as well as Luzerne County CYS and the Wright Township Police Department. As to Liller and CYS, Finn brings claims pursuant to 42 U.S.C. § 1983, alleging that Liller conspired with the other individual defendants to maliciously prosecute him, even though she knew there was no probable cause for such charges. Finn also brings related state law claims of conspiracy and malicious prosecution, as well as intentional infliction of emotional distress. Finally, Finn asserts a municipal liability claim pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), alleging that CYS is liable for Liller's actions.

Defendants Liller and CYS have now filed the instant motion to dismiss (Doc. 43), arguing that Finn has failed to adequately plead these claims against them. First, they assert that Liller, as a CYS caseworker, is entitled to absolute immunity pursuant to the Pennsylvania Child Protective Services Law, 23 Pa. Cons. Stat. §

6301, *et seq*, and is also entitled to qualified immunity. Further, they assert that Finn's claims against Liller fail on their merits. Finally, the defendants assert that CYS is entitled to sovereign immunity, and that the <u>Monell</u> claim against CYS fails on its merits. This motion has been fully briefed and is ripe for resolution. (Docs. 46, 56). For the following reasons, we agree, and we will recommend that this motion to dismiss be granted.

### III.   <u>Discussion</u>

#### A. <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to

7

dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B. **This Motion to Dismiss Should Be Granted.**

As we have noted, Finn brings claims against these defendants pursuant to § 1983, alleging that they conspired to maliciously prosecute him for child abuse without probable cause. He also brings a claim against CYS, alleging that it is liable for Liller's actions pursuant to Monell. Finally, he brings a claim against Liller for

10

intentional infliction of emotional distress. However, after review of the complaint, we find that the plaintiff has not sufficiently pleaded these claims against the defendants. Accordingly, we will recommend that the motion to dismiss be granted.

### 1. Absolute and Qualified Immunity

The defendants assert that Liller, as a CYS caseworker, is entitled to absolute immunity from the malicious prosecution and conspiracy claims asserted against her pursuant to the CPS Law. They further assert that Liller is entitled to qualified immunity. We agree.

It is well-settled that agency personnel such as Liller are absolutely immune from civil liability for their role in state court litigation on behalf of children who may be at risk. As we have recognized in the past,

> "CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." Ernst v. Child & Youth Servs. of Chester Cty., 108 F.3d 486, 495 (3d Cir. 1997). This "absolute immunity protects not only . . . presentations of . . . recommendations to a court, but also the[] 'gathering and evaluation of information' to formulate those recommendations and to prepare for judicial proceedings." B.S. v. Somerset Cty., 704 F.3d 250, 269 (3d Cir. 2013).

Ciprich v. Luzerne County, 2017 WL 3782786, at *6 (M.D. Pa. Mar. 24, 2017), report and recommendation adopted 2017 WL 37090752 (M.D. Pa. Aug. 28, 2017). Accordingly, Liller, who is sued in her capacity as a CYS caseworker who investigated Finn's daughter's reports of alleged sexual abuse, is absolutely immune from these claims.

Moreover, we note that the facts of this case would also fully justify dismissal of Liller on qualified immunity grounds. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." Id. (internal quotations omitted); see also al-Kidd, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point, but requires that "existing precedent must have placed the statutory

or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015).

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." Reichle, 566 U.S. at 664.

In this case, given the settled case law, which both permits and may compel the course of conduct followed by this official, it cannot be said that Liller violated Finn's clearly established constitutional rights when she conducted proceedings aimed at ensuring the safety of Finn's daughter. Indeed, qualified immunity has frequently been extended to children and youth agency personnel like Liller, who have participated in state court proceedings intended to ensure the safety of children. See e.g., Bayer v. Monroe Cty. Children & Youth Servs., 577 F.3d 186, 188 (3d Cir.

13

2009); <u>Bowser v. Blair Cty. Children & Youth Servs.</u>, 346 F. Supp. 2d 788, 794 (W.D. Pa. 2004) (qualified immunity for children and youth employee who seized child pursuant to court order). In short, Finn's claims fail both on absolute and qualified immunity grounds. These claims should, therefore, be dismissed.

However, even if we conclude that absolute or qualified immunity does not apply, for the reasons that follow, Finn's claims against Liller fail on their merits.

### 2. <u>Malicious Prosecution Claims</u>

Finn brings his malicious prosecution claims pursuant to both 42 U.S.C. § 1983 and state law.[2] In order to state a claim for malicious prosecution under § 1983, a claimant must show that: "(1) [the] defendant commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) defendant 'initiated the proceeding without probable cause'; (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice; and (5) plaintiff 'suffered deprivation of liberty consistent with the concept of seizure as a consequence of a

---

[2] While the defendants present an argument against a fabrication of evidence claim, which Finn's brief appears to set forth, Finn's brief in opposition concedes that he is not, in fact, bringing such a claim. (Doc. 56, at 12, n. 4). Moreover, while Finn may set forth legal arguments for such a claim in his brief in opposition, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." <u>Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) (citations omitted).

legal proceeding.'" <u>Watson v. Witmer</u>, 183 F.Supp.3d 607, 612-13 (M.D. Pa. 2016) (quoting <u>Johnson v. Knorr</u>, 477 F.3d 75, 81-82 (3d Cir. 2007)).[3]

In the instant case, Finn alleges that Liller withheld exculpatory information from her report—mainly, his sleep defense—which in turn, led to his arrest and prosecution for child abuse. He also asserts that Liller wrongfully labeled him a "child abuser" in the statewide database for child abuse, while knowing that he was not guilty of these crimes. At the outset, we note that "[n]either CYS, nor its employees, have the power to arrest or the power to criminally prosecute." <u>O'Hara v. Hanley</u>, 2011 WL 900033, at *11 (W.D. Pa. Mar. 14, 2011) (citing 23 Pa. Cons. Stat. § 6302(b); <u>In re Interest of J.R.W.</u>, 631 A.2d 1019 (Pa. Super. Ct. 1993)). Accordingly, it cannot be said that Liller, as the caseworker, initiated the criminal prosecution against Finn. This is particularly so because Liller and Engler, the Chief of the Wright Township Police Department, interviewed CF together, and Engler is the individual who filed an affidavit of probable cause and criminal complaint, thereby initiating the criminal proceedings against Finn. Moreover, inputting Finn in a Child Abuse database does not amount to initiating any type of criminal proceeding.

---

[3] The elements of a common law malicious prosecution claim in Pennsylvania are identical to a § 1983 claim. <u>See</u> <u>Cosmas v. Bloomingdales Bros., Inc.</u>, 660 A.2d 83, 85 (Pa. Super. Ct. 1995).

In addition, Finn's argument is premised on his assertion that Liller had actual knowledge that he was asleep when the inappropriate contact with his daughter occurred. He argues that Liller purposely omitted this information from her report in order to have criminal charges brought against him. However, we cannot say that based on the recording of CF, there was conclusive, exculpatory evidence that Finn was asleep during the incident in question. Indeed, we note that there is a certain implausible element to this claim that an alleged abuser slept through his abuse of a child which justifiably called for skepticism on the part of those who are mandated to protect children. It then follows that we cannot conclude that Liller had actual knowledge that Finn was asleep, and thus knowingly omitted exculpatory evidence from her report. Accordingly, Finn has not sufficiently stated a claim against Liller for malicious prosecution, and these claims should be dismissed.

### 3.  Conspiracy Claims

Finn also brings claims alleging a conspiracy under both § 1983 and Pennsylvania law. On this score, Finn faces exacting standards. Thus, to prevail on a § 1983 conspiracy claim, a plaintiff must prove that individuals "acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." Jutrowski v. Twp. Of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970)). In Pennsylvania, the standard for civil conspiracy is even higher, where a plaintiff must show "that two

16

or more persons *combined or agreed* with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Banks v. Gallagher, 686 F.Supp.2d 499, 528 (M.D. Pa. 2009) (quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa.1979) (internal quotations omitted)).

In the instant case, Finn's complaint simply fails to allege any facts from which we could infer that Liller agreed or reached an understanding with any of the individual defendants to violate Finn's civil rights. As we have explained, Liller is entitled to absolute and qualified immunity with respect to these claims. Moreover, Finn fails to state a claim against Liller for malicious prosecution because he has not alleged that she initiated criminal proceedings against him. However, even if we had concluded that Finn's complaint sufficiently states a malicious prosecution claim, the complaint simply alleges, in a completely conclusory manner, that Liller agreed to assist Maria Finn and Bivens and intentionally withhold what he claims is exculpatory evidence—his sleep defense—in her report. (Doc. 38, ¶ 56). There are no facts alleged that Liller had any communications with the individual defendants, other than through her duty to investigate the report of child abuse. Rather, the plaintiff relies solely on his sleep defense, which he contends is conclusive evidence of a lack of probable cause and that all of the individual defendants knew and ignored this evidence.

17

We reject the notion that Finn's claim that he was napping when he engaged in sexual contact with his own 13-year old daughter conclusively vitiates probable cause. Quite the contrary, in our view the wholly improbable nature of this sexual narcolepsy claim simply underscores that there was probable cause to bring this case.

In any event, it is clear that Finn's complaint lacks the *sine qua non* of a conspiracy claim—evidence of an agreement. See Eichelman v. Lancaster County, 510 F.Supp.2d 377, 391 (E.D. Pa. 2007). Moreover, the allegation that the defendants individually knew of Finn's alleged sleep defense and all failed to disclose that knowledge is not sufficient to state a claim for conspiracy. See In re Asbestos School Litigation, 46 F.3d 1284, 1292 (3d Cir. 1994) ("[U]nder the law of Pennsylvania . . . conscious parallelism is not sufficient to establish either a civil conspiracy or a concerted action"). Accordingly, while we find that Liller is entitled to immunity against these claims, we further find that Finn's complaint fails to state a claim for conspiracy against Liller, both under § 1983 and Pennsylvania law, and these claims should be dismissed.

### 4. *Monell* Claim

Next, Finn asserts a municipal liability claim against Luzerne County CYS, alleging that CYS is liable for Liller's violations of Finn's civil rights. This claim fails on several scores.

18

First, this claim against CYS runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. As a matter of constitutional law, the Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . ." U.S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies, and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the

19

various domestic relations agencies which are defined by statute as arms of the state courts, and institutions of state government. See e.g., Wattie-Bey v. Attorney Gen.'s Office, 424 F. App'x 95, 97 (3d Cir. 2011); Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. Moreover, as a matter of statutory interpretation, the plaintiffs cannot bring a damages action against these state agencies or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

In short, the immunities conferred on this state court agency both by statute, and by the United States Constitution, compel dismissal of this complaint as to Luzerne County Children and Youth Services.

Moreover, the allegations set forth in this complaint simply do not support a civil rights agency liability claim. On this score, it is well-settled that local governmental entities may not be held liable under section 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, 556

U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id., at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)). The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .' " Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus,

21

in that the " 'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.' " Id., at 325 (citations omitted). Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

In the instant case, we have little trouble concluding that Finn's complaint fails to state a Monell claim against CYS. At the outset, we note again that Finn's complaint fails to set forth sufficient factual allegations to plead a violation of his constitutional rights, as we have found his malicious prosecution and conspiracy claims against Liller cannot survive the motion to dismiss. Moreover, the complaint does not allege factual assertions showing a policy or custom that CYS enforced or encouraged relating to the state case brought against Finn. On this score, the Third Circuit has held that "[a] policy cannot ordinarily be inferred from a single instance of illegality." Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 911 (3d Cir. 1984); see also Round v. City of Phila., 2020 WL 2098089, at *9 (E.D. Pa. May 1, 2020) (finding that allegations concerning "only Plaintiffs' alleged experience" were insufficient to state a Monell claim). Here, Finn's complaint focuses solely on his prosecution for child abuse charges, which he contends was brought without probable cause. Absent a showing of comparable instances, this is not enough to

22

conclude that CYS's actions with respect to his criminal prosecution "reflected a larger policy or custom." Round, 2020 WL 2098089, at *9.

With respect to this institutional liability claim, in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Twombly, 550 U.S.at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. Fairly construed, these pleadings amount to little more than a formulaic recitation of the elements of a cause of action, without any supporting well-pleaded facts, a form of pleading that will not do. Therefore, Finn's Monell claims against this institutional defendant also fail as a matter of law and should be dismissed.

### 5. Intentional Infliction of Emotional Distress

Finally, Finn asserts a state law claim of intentional infliction of emotional distress against Liller, alleging that her conduct in investigating reports of child abuse were extreme and outrageous and caused Finn severe emotional distress. We note that the proposed disposition of the plaintiff's federal legal claims, in turn, suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against these defendants. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the proper course generally

23

is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976).) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains"). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

Here, we have found that Finn's federal claims are subject to dismissal at the outset of this litigation. Therefore, in the exercise of our discretion in this district, we should decline to assert supplemental jurisdiction over potential ancillary state

24

law claims in this case where all potential federal claims brought before us failed as a matter of law. Accordingly, this pendent state law claim should be dismissed without prejudice.

## IV.    <u>**Recommendation**</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendants' motion to dismiss (Doc. 43) be GRANTED, and that the claims against Defendants Liller and Luzerne County CYS be dismissed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of October 2020.


/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge